Robert W. **BLANCHETTE**, Richard C. Bond and John H. McArthur, Trustees of the property of Penn Central Transportation Co.

v.

**UNITED STATES RAILWAY ASSOCIATION and Consolidated Rail Corporation.**

Civ. A. No. 77–32.

Special Court
Regional Rail Reorganization Act.

Oct. 25, 1978.

Paul R. Duke and Lawrence T. MacNamara, Jr., Washington, D. C., for plaintiffs.

G. Joseph King and L. Louis Mrachek, Washington, D. C. (Cary W. Dickieson and Stephen C. Rogers, Washington, D. C., of counsel), for defendant, U. S. Ry. Ass'n.

John G. Harkins, Jr., Laurence Z. Shiekman, Teresa R. Novick and Pepper, Hamilton & Sheetz, Philadelphia, Pa., for defendant, Consolidated Rail Corp.

Before FRIENDLY, Presiding Judge, and WISDOM and THOMSEN, Judges.

THOMSEN, Judge:

In this civil action brought by the Trustees of the Property of Penn Central Transportation Company (PC) against United States Railway Association (USRA) and Consolidated Rail Corporation (Conrail), PC seeks a declaratory judgment that Conrail is responsible for the payment of portions of various taxes and other charges which were assessed against PC by several state authorities, based upon the gross revenues earned by PC from its intrastate operations during a fiscal year which expired before the conveyance date (April 1, 1976) but were payable, usually in quarterly instalments, during a fiscal year which spanned the conveyance date. PC relies upon section 4A(1) of this court's conveyance order, dated March 25, 1976, effective April 1, 1976, which provides:

"A. *Allocation of Taxes, Assessments, Rents, License Fees, User Fees, and Other Charges*

"(1) *Allocation Over Time.* As between the Transferor and Transferee identified in any Conveyance Document with respect to rail property conveyed to a Transferee pursuant to this Order, the obligation, if any, for payment of

"(a) any tax, assessment, license fee or other charge imposed by a governmental authority on or with respect to any such property or any use thereof for any period of time or term *within which the Conveyance Date falls,* or

"(b) any rent, license fee, user fee or other charge imposed under *or by virtue of any lease, license, easement, encumbrance or other agreement that continues to attach to such property after the Conveyance Date,*

shall be adjusted on a *pro rata* basis to the Date of Conveyance so that

"(i) the Transferor is obligated for any such payment as is attributable to that portion of such period or term preceding the Conveyance Date, and

"(ii) the Transferee is obligated for any such payment as is attributable to the balance of such period or term."

The case has been submitted to the court for decision on the pleadings and a stipulation of facts.

None of the charges involved can properly be characterized as a direct tax, assessment, license fee or other charge (hereinafter charge) on property. Most, if not all of them, however, may be characterized as charges on the use of property within the assessing states for the privilege of doing business as a public utility (in this case a railroad) furnishing intrastate service during a specific term (calendar year or fiscal year);[1] all are based upon the amount of intrastate business done by the railroad, in this case PC, during the fiscal year immediately preceding the fiscal year in which the assessment was made and was payable, usually in quarterly instalments; all involved the property owned or used by PC, some of which was conveyed to Conrail and some not.

In each instance PC reported to the state taxing authority its receipts from its intrastate business during the fiscal year preceding April 1, 1976; PC was thereupon assessed the appropriate tax for doing business in that state during the fiscal year which included April 1, 1976. PC has acknowledged its responsibility for the portion of each such tax or charge which fell due before April 1, 1976, but claims that Conrail should pay the remaining instalments for such fiscal year, i. e., those which fell due on or after April 1, 1976.

Conrail denies that it is liable to PC or to the states with respect to any such taxes based upon the business done by PC before April 1, 1976. Conrail alleges and it is not disputed that Conrail has fully complied with the reporting and paying provisions of the statutes of the several states based upon the intrastate business done by Conrail on and after April 1, 1976.[2]

\* \* \* \* \* \*

PC argues that section 4A(1) of the conveyance order, set out in full above, provides for the *pro rata* apportionment of charges imposed by a governmental authority with respect to the use of the property conveyed and requires a *pro rata* adjustment of such taxes "over the conveyance date;" that the assessments and taxes at issue in this proceeding are imposed with respect to the use of the conveyed property; that the periods for which the taxes are imposed either span or follow the conveyance date; that although virtually all of the taxes in question are measured by the gross railroad revenues obtained by PC from its intrastate operations during a prior period, this simply represents a measuring device to ascertain the amount of the tax owed for the current period; and, therefore, that Conrail is, by the terms of the conveyance order, obligated for the payments attributable to the remainder of any such period following March 31, 1976.

On the other hand, Conrail argues: (1) that the assessments and taxes in question were imposed upon the corporate entity, PC, (2) and not "on or with respect to the use of conveyed property within the meaning of § 4A of the conveyance order;" (3)

---

1. The charges which are the subject of the action fall into two groups:

   (A) Six state charges which may be described as assessments for the maintenance and support of a public utility commission, viz: 66 P.S. § 1461 (Pennsylvania) (Assessment of regulatory expenses upon public utilities); Ohio Rev.Code Ann. § 4905.10, as amended (Assessment for commission expenses); Md.Ann.Code, Art. 78, § 88 as amended by 1975 Md.Laws, ch. 153 (Payment of expenses of the commission); Ill.Ann.Stat., ch. 111⅔, § 7a.1 et seq., as amended (Smith Hurd); N.J.Stat.Ann. § 48:2–59 et seq. (Supp.1977) (Assessments against public utilities); and W.Va.Code § 24–3–6(b) (Special license fee; "public service commission fund").

   (B) Two state charges which may be described as gross receipts and utility excise taxes, viz: Ohio Rev.Code Ann. § 5727.31 et seq. (excise tax on railroads and street, suburban and interurban railroads); and Md.Ann.Code, Art. 81, § 129 et seq. (gross receipts tax).

2. USRA filed an answer: stating that it is without knowledge or information sufficient to form a belief as to the truth of the allegations in the complaint which are in dispute; arguing that the complaint fails to state a claim against USRA upon which relief can be granted; and praying "that the Complaint be dismissed with prejudice and for such further relief as may be just and appropriate." USRA has filed no brief herein.

that the assessments for maintenance and support of the public utility commissions of the several states were based upon PC's gross receipts during appropriate periods before April 1, 1976; and (4) that the same is true of the gross receipts tax and the utilities excise tax imposed by two of the states. Conrail acknowledges, of course, that some of the rail properties owned by PC in the several states were conveyed to it, but notes that the PC corporate entity was not conveyed to it, and argues that it is not responsible to discharge any "corporate taxes" imposed on PC. Conrail asserts that our interpretation of the conveyance order must be governed by the policies of the Rail Act which the conveyance order implements, in order to permit Conrail to begin operations with a clean slate. Finally, Conrail argues that it should not be liable for any taxes, assessments or other charges which are based on or measured by revenues earned by PC prior to the conveyance date.[3]

\* \* \* \* \* \*

It is not clear from the record in this case that any of the states would be able to collect from PC all or even part of any of the items which PC asks this court to require Conrail to pay. Some, if not all, of the claims made by the several states against PC may be valid only for the period during which PC conducted intrastate business in the state, i. e., prior to April 1, 1976, according to both PC and Conrail. Nor does the record indicate whether Conrail has been given an opportunity to oppose any attempt by the states to collect from or to prove claims against PC for all or any part of the taxes which PC asks this court to declare Conrail responsible to pay.

The charges were *imposed* on the use for intrastate transportation by PC of property within the several states, all of which was not conveyed to Conrail; it was *measured* by the revenues received by PC from such intrastate operations. It is not clear whether or not PC would be liable for any of the taxes or charges involved which became due after March 31, 1976, because it does not appear from the record in this case whether or not PC continued to conduct *any* intrastate railroad operations in any of the states after March 31, 1976. If PC did conduct any intrastate railroad operations in a particular state after March 31, 1976, PC would be obligated to pay the taxes in question, of which the measure would be the previous fiscal year's revenues from intrastate operations and not those of the current fiscal year. If PC did not conduct any intrastate railroad operations in a state after March 31, 1976, it is doubtful whether PC would have been liable to that state for any such taxes which became payable after that date. Section 4A(1) of the conveyance order was not intended to create a liability for the payment of taxes (whether ultimately to be paid by PC or by Conrail) where none would otherwise have existed. The fact that some or all of those tax claims were calculated on the basis of PC's gross receipts or earnings during a period before April 1, 1976, may or may not be dispositive of the issue whether the several states can collect from either PC or Conrail any such instalment which became due after PC had ceased to operate a railroad in the state. Consideration should be given to the fact that Conrail has become liable to comply with the tax laws of the several states with respect to *its* intrastate operations on and after April 1, 1976. The fact that there may have been lacunae of three, six or nine months because of the statutes of the several states would not be conclusive.

None of the states is a party to this proceeding. Therefore, this court cannot authoritatively decide in this case the question whether a state is entitled to collect,

---

3. Conrail also refers to the "general scheme of the Rail Act and of the FSP that ConRail was to emerge with rail properties designated for it, for which just compensation would be paid, but without the attending financial obligations." *Stratford Land & Improvement Co., Inc. v. Blanchette*, 448 F.Supp. 279, at 284 (Sp.Ct.

1978). We adhere to our view of the "general scheme of the Rail Act;" the question in this case, however, is whether or not the claims asserted by PC herein are such "attending financial obligations", and we do not have all the facts or all the parties before us to enable us fairly to decide that question.

from either PC or Conrail, any instalment of any of the taxes involved herein which would have been payable by PC if PC had continued to furnish intrastate railroad service in such state after March 31, 1976.[4] It would not be proper to attempt to dispose of that issue in this case, in which none of the states is a party. It may be that even if such a claim were allowed in the bankruptcy proceedings it would not be payable in full but that only a dividend or other portion thereof would be payable. If such a claim has been or is being pressed, in the reorganization proceedings or elsewhere, Conrail should have been or should be given the right to defend against it before this court could properly hold that Conrail is liable to indemnify PC for any amount PC may be required to pay, apart from any other defense Conrail may have. A decision of the issues presented in this case would, therefore, be premature and based on insufficient facts. This court intimates no opinion with respect to the proper resolution of any efforts any state may make to collect the charges in question from Conrail.

The present action is hereby dismissed, without prejudice as to Conrail and with prejudice as to USRA.

---

4. It does not appear from the record in this case that PC has paid any part of any such instalment to any of the states.