The CAYUGA INDIAN NATION OF NEW YORK, et al., Plaintiffs,

and

The Seneca–Cayuga Tribe of Oklahoma, Plaintiff–Intervenor,

v.

Mario M. CUOMO, et al., Defendants.

Nos. 80–CV–930, 80–CV–960.

United States District Court, N.D. New York.

April 17, 1991.

O'Connor Cavanagh Anderson Westover Killingsworth & Beshears (Glenn M. Feldman, of counsel), Phoenix, Ariz. and Joseph Gajarsa McDermott & Reiner (Arthur J. Gajarsa, of counsel), Washington, D.C., for plaintiffs and plaintiff-intervenor.

Robert Abrams, Atty. Gen. of the State of N.Y. (David B. Roberts, Asst. Atty. Gen., of counsel), Albany, N.Y., for State defendants.

Huber Lawrence & Abell, (Howard M. Schmertz, of counsel), New York City, for defendant New York State Elec. & Gas Corp.

Hiscock & Barclay, (Richard K. Hughes, of counsel), Syracuse, N.Y., for Consol. Rail.

Goodwin Procter & Hoar (Allan van Gestel, of counsel), Boston, Mass., for Counties of Cayuga, Seneca and Miller Brewing.

Wiles Fahey & Lynch (Joseph E. Fahey, of counsel), Syracuse, N.Y.

## MEMORANDUM–DECISION AND ORDER

McCURN, Chief Judge.

### Background

This is the fifth memorandum-decision and order issued by this court concerning

the present action, which was filed in November, 1980; and familiarity with the facts and circumstances surrounding the proceedings involved in this case is presumed. *See Cayuga Indian Nation of New York et al. v. Cuomo et al.,* 565 F.Supp. 1297 (N.D.N.Y.1983) (*"Cayuga I"*); *Cayuga Indian Nation of New York et al. v. Cuomo et al.,* 667 F.Supp. 938 (N.D.N.Y. 1987) (*"Cayuga II"*); *Cayuga Indian Nation of New York et al. v. Cuomo et al.,* 730 F.Supp. 485 (N.D.N.Y.1990) (*"Cayuga III"*) and *Cayuga Indian Nation of New York et al. v. Cuomo et al.,* 758 F.Supp. 107 (N.D.N.Y.1991) (*"Cayuga IV"*). Nevertheless, for the benefit of those individuals for whom these waters are as yet uncharted, a brief review concerning the background of plaintiffs' claims is instructive.

Plaintiff Cayuga Indian Nation of New York and plaintiff-intervenor Seneca–Cayuga Tribe of Oklahoma (collectively referred to as the "plaintiffs" or the "Cayugas") both seek a declaration from this court concerning their current ownership of, and right to possess, a tract of land in central New York State containing slightly more than 64,000 acres ("the subject land"), an award of fair rental value for the almost two hundred years during which they have been out of possession of the subject land, and other monetary and protective relief.[1]

This court has previously held that the plaintiffs can present evidence in support of the above claims. *Cayuga I,* 565 F.Supp. at 1330. In *Cayuga II,* this court denied both parties' motions for summary judgment on plaintiffs' claims. *Id.,* 667 F.Supp. at 949. In *Cayuga III,* this court granted the plaintiffs' motion for partial summary judgment, and held that agreements entered into in the years 1795 and 1807 between the plaintiffs and New York State, wherein the plaintiffs purportedly conveyed to the State of New York the plaintiffs' interest in the subject land, were invalid. *Id.,* 730 F.Supp. at 493. In its

most recent decision to date concerning this case, this court held that the Cayugas obtained recognized title in the subject land by way of the 1794 Treaty of Canandaigua, and that therefore the defendants' defense of abandonment was legally insufficient to defeat plaintiffs' claim to this land. *Cayuga IV,* 758 F.Supp. at 117.

By the present motion, defendant Consolidated Rail Corporation ("Conrail") has moved for summary judgment dismissing plaintiffs' complaint as against Conrail. The basis for this motion is Conrail's contention that the Regional Rail Reorganization Act, 45 U.S.C. §§ 701–797m (the "RRR Act" or "Rail Act"), which created Conrail, also established a Special Court which has original, exclusive and sole jurisdiction to hear and determine claims challenging Conrail's legal title to rail lines transferred to it pursuant to the Rail Act.

### Discussion

Initially, this court notes the lateness of the hour at which it is being asked to determine whether it has subject matter jurisdiction over plaintiffs' claims asserted against Conrail. It is clear that the review of a court's jurisdiction over the subject matter of an action can be raised by any party at any time during the pendency of a claim. *See E.E.O.C. v. Local 580 Int'l Ass'n of Bridge, Structural & Ornamental Ironworkers et al.,* 925 F.2d 588, 592 (2d Cir.1991). Nonetheless, the amendment to the RRR Act upon which Conrail's motion is based was enacted approximately fifteen years ago, and this action was commenced over ten years ago. The court is hopeful that challenges to its jurisdiction regarding claims brought before it in the future will be raised by the parties in such actions in a more timely fashion, thereby preventing the court from unnecessarily wasting its scarce resources resolving disputes concerning claims over which it has no jurisdiction.

---

1. Plaintiffs maintain that their members are the direct successors in interest to the Cayuga Nation of the Six Nation Iroquois Confederacy which, until the acts complained of in this suit, occupied the land at issue since time immemori-

al. *Cayuga I,* 565 F.Supp. at 1302. The Six Nations in this Confederacy were comprised of the Cayuga, Oneida, Tuscarora, Mohawk, Onondaga and Seneca Nations. *Id.* at 1303.

Defendant Conrail contends that jurisdiction over plaintiffs' claims against it lies exclusively in the Special Railroad Reorganization Court ("Special Court"), established by Congress through the Rail Act.[2] Conrail alleges that 45 U.S.C. § 719(e)(1) of this Act precludes this court from exercising subject matter jurisdiction over the Cayugas' claims against Conrail. This section of the Act states, in pertinent part:

Notwithstanding any other provision of law, any civil action—

\*　　\*　　\*　　\*　　\*　　\*

(E) brought after a conveyance, pursuant to section 743(b) of this title, to set aside or annul such conveyance or to secure in any way the reconveyance of any rail properties so conveyed; ...

shall be within the original and exclusive jurisdiction of the special court.

Thus, in resolving the issue before it, this court must determine whether (i) the property at issue involves land which was conveyed to Conrail pursuant to section 743(b) of Title 45, (ii) plaintiffs' claims seek to set aside or annul such conveyance and (iii) the Special Court has exclusive jurisdiction to hear plaintiffs' claims against Conrail. In addressing this question, a brief review of the parties' positions relative to the same is warranted.

Conrail notes that the Conrail properties at issue in the present litigation were designated by the United States Rail Association ("U.S.R.A.") to be included in the Final System Plan developed by the U.S.R.A. pursuant to 45 U.S.C. §§ 716–717.[3] In July, 1975, this Final System Plan was submitted to, and thereafter approved, by Congress. The Special Court subsequently conveyed these properties to Conrail "free and clear of liens and encumbrances" by

order of the Special Court dated March 25, 1976; with title passing to Conrail at 12:01 a.m., April 1, 1976.[4] The deeds Conrail received for these properties were executed and duly recorded by Conrail in Onondaga, Seneca and Cayuga Counties on March 30, 1976.[5] Thus, Conrail claims that it obtained the subject properties pursuant to section 743(b) of Title 45.[6]

Turning to the relief sought against Conrail, plaintiffs' claims relate to lands which are a part of Conrail's Auburn Secondary Branch. These properties were conveyed to Conrail by the Special Court's order of March, 1976.[7] Conrail contends that the plaintiffs' claims seek "to set aside or annul" the conveyance of these lands. Thus, Conrail argues that these claims must be brought before the Special Court, and that Court alone, pursuant to 45 U.S.C. § 719(e)(1)(E).[8]

The Cayugas initially argue that Conrail's motion should be denied because it can point to no legislative history concerning the enactment of the RRR Act which indicates that Congress intended this Act to extinguish the rights Indian tribes might have regarding reservation lands affected by the Rail Act. Thus, the Cayugas state that:

There is no clear and plain indication that Congress in creating the Rail Act and the [Final System Plan] intended to condemn and take a right of way for the reconstructed railroad system across an Indian reservation thereby terminating Indian title. Congress by adopting the Rail Act did not intend to extinguish any of the rights which the Cayugas had to their reservation lands.

\*　　\*　　\*　　\*　　\*　　\*

---

2. This Special Court is comprised of a three-judge district court bench selected by the judicial panel on multi-district litigation. *See* 45 U.S.C. § 719(b).

3. Affidavit of Andrew M. Mancini, 11/15/90 ("Mancini Aff."), ¶¶ 5, 7.

4. *Id.,* ¶ 8. The order issued by the Special Court wherein this conveyance was accomplished is reproduced in full at exhibit A of this affidavit.

5. *Id.,* ¶ 11. The copies of these deeds are reproduced in the Mancini Aff. at exhibit C.

6. This section of the RRR Act provides the procedural mechanism by which rail properties are formally conveyed under this Act. *See* 45 U.S.C. § 743(b)(1)-(6).

7. Mancini Aff., ¶ 10.

8. Defendant's memorandum of law in support of its motion for summary judgment, pp. 5–10.

The Congress, cannot by adopting a general act, such as the Rail Act, nullify the Cayuga property rights so established [by the 1794 Treaty of Canandaigua], unless it clearly intended to terminate such rights and take by eminent domain the Indian lands.[9]

They also argue that the conveyance of the Conrail properties to this defendant ordered by the Special Court in March, 1976 was "null and void, *ab initio*" because such transfer "was in contravention of the dictates of the Non–Intercourse Act and is invalid."[10]

The Cayugas further allege that any jurisdiction the Special Court possesses concerning their claims against Conrail is, at most, concurrent with this court's jurisdiction over the same. They note that 28 U.S.C. § 1362 grants federal district courts original jurisdiction over all cases brought by Indian tribes. They then cite several cases in support of their contention that the Special Court does not have exclusive jurisdiction over plaintiffs' claims.

Finally, the Cayugas' argue that dismissal of their claims against Conrail would result in piecemeal litigation—they state that if Conrail's position is followed to its logical conclusion, plaintiffs would be required to bring their claims in four distinct forums, including this court and the Special Court.[11] Plaintiffs' contend that "considerations of judicial efficiency and comprehensive disposition of the claim litigation, require review and consideration of all the pending issues in their entirety by this Court."[12]

With respect to the Cayugas' first and second arguments, plaintiffs' contentions that conveyances made pursuant to the RRR Act could not divest the Cayugas of their title to the Conrail properties, and that the transfer of such land to Conrail in the spring of 1976 was null and void *ab initio*, presuppose a favorable outcome in their current lawsuit.

■■■ It is clear that federal government ratification of a conveyance of Indian land must be plain, unambiguous and explicit. *See e.g. Cayuga II,* 667 F.Supp. at 944; *Cayuga III,* 730 F.Supp. at 490. However, the Conrail properties at issue are not, at the present time, Indian land. Indeed, such a determination is one of the goals of the present lawsuit. The plaintiffs have not yet prevailed in their case. Conrail currently possesses title, albeit clouded by the instant lawsuit, to the subject properties. When the Special Court ordered the conveyance of the land to Conrail, that Court was not transferring, conveying or otherwise altering title to Indian land. Rather, it was conveying property held at that time by non-Indian landowners. Thus the Special Court, acting pursuant to the Rail Act, did not need explicit congressional authorization relating to the sale of Indian lands prior to its conveying the properties at issue to Conrail. Nor did it have to comply with the requirements of the Non–Intercourse Act in order for such transfer to be valid, for the Special Court was not conveying Indian land at that time.

■■■ The plaintiffs' assertion that this court has concurrent jurisdiction with the Special Court regarding their claims is equally without merit.

For example, the Cayugas contend that "[t]he instant case is somewhat analogous to *Stratford Land and Improvement Co. v. Blanchette,* 448 F.Supp. 279 (Sp.Ct.R.R. R.A.1978)".[13] However, plaintiffs' reliance on *Stratford Land* is misplaced.

---

9. Plaintiffs' memorandum of law in opposition to Conrail's motion for summary judgment ("Pl. Mem."), pp. 5, 8.

10. *Id.,* p. 4, *citing Cayuga II,* 667 F.Supp. at 946. The Nonintercourse Act provides the manner by which valid conveyances of Indian land are accomplished. This statute states, in part, that:
   No purchase, grant, lease, or other conveyance of lands, or of any title or claim thereto, from any Indian nation or tribe of Indians, shall be of any validity in law or equity, unless the same be made by treaty or convention entered into pursuant to the Constitution. *See* 25 U.S.C. § 177.

11. Pl.Mem., p. 3 at n. 3.

12. *Id.,* p. 14.

13. *Id.,* p. 13.

In *Stratford Land,* the Special Court was resolving a dispute which centered around whether a certain agreement involving refund obligations, entered into in May, 1971 between Stratford Land and Improvement Company, Stratford Industrial Corporation and the Trustees of the Penn Central Railroad ("Penn Central"), was or should have been conveyed to Conrail along with the real property Conrail obtained from the Trustees by order of the Special Court. *Id.,* 448 F.Supp. at 281–82.

However, in that case the agreement entered into between the parties did not become part of the Final System Plan, nor was it developed pursuant to the Rail Act. Rather, such agreement was entered into prior to the passage of this Act, and the plaintiffs sought, unsuccessfully, to have this agreement included in the conveyance of property from the Trustees of Penn Central to Conrail. In the present case, the properties at issue were clearly conveyed to Conrail pursuant to the RRR Act, and this conveyance is accordingly governed by the Rail Act's provision. Thus, *Stratford Land* is not helpful in resolving the question at hand.

The facts in *Prairie Central Railway v. Illinois Central Gulf R.R.,* 564 F.Supp. 385 (Sp.Ct.R.R.R.A.1983), another case relied upon by the plaintiffs' in opposing Conrail's motion, are similarly inapposite to those in the present case.

*Prairie Central* did not involve a designation or conveyance of property made pursuant to the Final System Plan, nor did it involve any action, or inaction, authorized by the U.S.R.A. *See id.* at 388. As discussed *supra,* it is clear that the Conrail properties at issue were designated by the U.S.R.A. to be included in the Final System Plan developed by this Association. This land was conveyed to Conrail by the Special Court "free and clear of liens and encumbrances" pursuant to the RRR Act. Thus the *Prairie Central* court's holding that the Special Court did not have jurisdiction over plaintiffs' claim in that case is not dispositive of the issue currently before this court.

Nevertheless, that case is helpful in ascertaining the scope of the Special Court's jurisdiction over claims brought under the Rail Act.

In dismissing the plaintiffs' claims for lack of jurisdiction, the *Prairie Central* court noted that:

It is not every challenge relating to the Act that Congress brought within our exclusive province but only those where the critical nature of the determination demands the consistent interpretation possible only when review is concentrated in a single court.... Congressional concern focused on providing for exclusive jurisdiction where the Special Court's central functions under the Rail Act were concerned while narrowing the exclusive jurisdiction to oust problems which could be effectively dealt with by other courts.

*Id.* at 389, *quoting Consolidated Rail Corp. v. State of Illinois,* 423 F.Supp. 941, 948 (Sp.Ct.R.R.R.A.1976). Thus, the Special Court has exclusive jurisdiction over cases which involve that court's "central functions" under the Rail Act.

In the instant case, the plaintiffs are not merely asking this court to interpret the language of the document which conveyed the subject properties to Conrail. Rather, they seek a declaration from this court stating that the conveyance of the land itself, which conveyance was part and parcel of the Final System Plan and obtained by Conrail pursuant to the RRR Act, was void *ab initio.* Such a challenge clearly concerns the Special Court's central functions. *See e.g. Consolidated Rail Corp. v. Penn Central Corp.,* 533 F.Supp. 1351, 1353 (Sp.Ct.R.R.R.A.1982) (holding that "[t]he interpretation of a conveyance order is clearly within the exclusive jurisdiction of this court."). Further, it is well settled that the Special Court has *exclusive* jurisdiction over disputes which involve the Court's central functions. *See id., citing Consolidated Rail Corp. v. Pittsburgh & Lake Erie Railroad Co.,* 459 F.Supp. 1013, 1017 (Sp.Ct.R.R.R.A.1978). Thus, the plaintiffs' claims against Conrail in the instant case involve disputes which concern

the Special Court's central functions; therefore that Court has jurisdiction over plaintiffs' claims. The remaining issue for this court to determine relates to whether the Special Court has exclusive or concurrent jurisdiction with this court over the present dispute.

In *Blanchette v. Conn. General Ins. Corp.*, 419 U.S. 102, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974), the Supreme Court was confronted with the issue of whether individuals whose property was seized by eminent domain could sue for additional damages in the Court of Claims under the Tucker Act, 28 U.S.C. § 1491, notwithstanding the passage of the RRR Act which provided that certain claims under the Rail Act could only be brought in the Special Court.

The Court initially noted that the Rail Act did not specifically state that the Tucker Act was no longer a proper vehicle for the plaintiffs to utilize in bringing their claims against the defendants in the Court of Claims. The *Blanchette* Court thereafter looked into the legislative history surrounding the passage of the RRR Act, and concluded by noting:

> In sum, we cannot find that the legislative history supports the argument that the Rail Act should be construed to withdraw the Tucker Act remedy. The most that can be said is that the Rail Act is ambiguous on the question. In that circumstance, applicable canons of construction require us to conclude that the Rail Act is not to be read to withdraw the remedy under the Tucker Act.

*Id.* at 133, 95 S.Ct. at 353.

Thus, the Supreme Court found that the plaintiffs could properly bring their claims in the United States Court of Claims.

In contrast to the portion of the RRR Act discussed by the Court in *Blanchette*, the language of the Rail Act at issue in the present case specifically discusses the appropriate forum for legal challenges to conveyances of land made under this Act. The Rail Act clearly states that the exclusive forum for challenges which seek to set aside or annul conveyances made under the Act is the Special Court. *See* 45 U.S.C. § 719(e)(1)(E).

■ In interpreting the language contained in this statute, the court first examines the language of the statute itself. When the wording of a statute is plain and unambiguous, the court's inquiry should stop there, unless it is clear that the legislature intended a meaning which is contrary to the language of the statute itself. This is known as the "plain meaning" rule of statutory construction. *See e.g. Martin J. Simko Const., Inc. v. U.S.*, 852 F.2d 540, 542 (Fed.Cir.1988).

In the present case, the language of the Rail Act unambiguously states that lawsuits which seek to set aside or annul conveyances made under the RRR Act "shall be within the *original and exclusive* jurisdiction of the special court" (emphasis supplied). Nothing in the legislative history of this statute indicates to this court that Congress intended the word "exclusive" to mean anything other than the plain meaning of the word "exclusive" when it used this word in this statute.[14] Since plaintiffs' claims against Conrail clearly seek to annul the conveyance of land ordered by the Special Court in March, 1976, jurisdiction over plaintiffs' claim lies exclusively in the Special Court.

In light of the foregoing, this court concludes that the Special Court has exclusive jurisdiction over the Cayugas' claims

---

14. The pertinent portion of the legislative history surrounding this subsection of the Rail Act notes that:

> A new subsection (e) would be added to section 209 of the Act to provide that actions brought to challenge or to enforce or to declare rights under or pursuant to the Act, the final system plan and the implementation of the final system plan, are within the original and exclusive jurisdiction of the special court.... It is not the Committee's intent to

create new rights of judicial review or attack that did not exist prior to the passage of the Act. It is the Committee's purpose to make clear that such actions must be brought in the Special Court, even though in some instances the Special Court itself will have no alternative but to dismiss the law suit because the action ... is not subject to court review.

*See* S.Rep. No. 94–499, 94th Cong., 2nd Sess., *reprinted in* 1976 U.S.Code Cong. & Admin. News 14, 98.

against Conrail, and that this court is without jurisdiction to hear the same. Accordingly, Conrail's motion to dismiss plaintiff's claims against it is granted pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.