The CAYUGA INDIAN NATION OF
NEW YORK, et al., Plaintiffs,

and

The Seneca–Cayuga Tribe of Oklahoma,
Plaintiff–Intervenor,

v.

Mario M. CUOMO, et al., Defendants.

Nos. 80–CV–930, 80–CV–960.

United States District Court,
N.D. New York.

Aug. 13, 1991.

O'Connor Cavanagh Anderson Westover Killingsworth & Beshears (Glenn M. Feldman, of counsel), Phoenix, Ariz., and Joseph Gajarsa McDermott & Reiner (Arthur J. Gajarsa, of counsel), Washington, D.C., for plaintiffs and plaintiff-intervenor.

Robert Abrams, Atty. Gen. of State of N.Y. (David B. Roberts, Asst. Atty. Gen., of counsel), Albany, N.Y., for State defendants.

Huber Lawrence & Abell (Howard M. Schmertz, of counsel), New York City, for defendant New York State Elec. & Gas Corp.

Hiscock & Barclay (Richard K. Hughes, of counsel), Syracuse, N.Y., for Consolidated Rail.

Goodwin Procter & Hoar (Allan van Gestel, of counsel), Boston, Mass., for Counties of Cayuga, Seneca & Miller Brewing.

Wiles Fahey & Lynch (Joseph E. Fahey, of counsel), Syracuse, N.Y.

### MEMORANDUM–DECISION AND ORDER

McCURN, Chief Judge.

### BACKGROUND

This action was commenced in November, 1980 by the Cayuga Indian Nation of New York. On November 9, 1981, this court granted the motion brought by the Seneca–Cayuga Tribe of Oklahoma to intervene in this action. The plaintiffs (or the "Cayugas") seek a declaration from this court concerning their current ownership of and right to possess a tract of land in central New York State containing approximately 64,000 acres ("the subject land"), an award of fair rental value for the almost two hundred years during which they have been out of possession of the subject land, and other monetary and protective relief. This court already has issued several decisions concerning the present action. In *Cayuga Indian Nation of New York, et al. v. Cuomo, et al.,* 565 F.Supp. 1297 (N.D.N.Y.1983) ("*Cayuga I*"), this court denied the defendants' motion to dismiss plaintiffs' complaint, and held that the plaintiffs can present evidence in support of their claims. *Cayuga I,* 565 F.Supp. at 1330. In *Cayuga Indian Nation of New York, et al. v. Cuomo, et al.,* 667 F.Supp. 938 (N.D.N.Y.1987) ("*Cayuga II*"), this court denied both parties' motions for sum-

mary judgment on plaintiffs' claims. *Cayuga II,* 667 F.Supp. at 949. In *Cayuga Indian Nation of New York, et al. v. Cuomo, et al.,* 730 F.Supp. 485 (N.D.N.Y.1990) ("*Cayuga III*"), the court granted the plaintiffs' motion for partial summary judgment, and held that agreements entered into in the years 1795 and 1807 between the plaintiffs and New York State, wherein the plaintiffs purportedly conveyed to the State of New York the plaintiffs' interest in the subject land, were invalid. *Cayuga III,* 730 F.Supp. at 493. In *Cayuga Indian Nation of New York, et al. v. Cuomo, et al.,* 758 F.Supp. 107 (N.D.N.Y.1991) ("*Cayuga IV*"), this court determined that the Cayugas obtained recognized title in the subject land by way of the 1794 Treaty of Canandaigua, and that therefore the defendants' defense of abandonment was legally insufficient to defeat plaintiffs' claims. *Cayuga IV,* 758 F.Supp. at 118. Most recently, the court, in *Cayuga Indian Nation of New York, et al. v. Cuomo, et al.,* 762 F.Supp. 30 (N.D.N.Y.1991) ("*Cayuga V*"), granted the motion to dismiss plaintiffs' complaint brought by defendant Consolidated Rail Corporation ("Conrail") as against that defendant.[1]

By the present motion, the plaintiffs seek an order from this court declaring that the defendants are liable to the plaintiffs, and that any and all defenses of the defendants, including their affirmative defense of laches, are insufficient as a matter of law to avoid liability on plaintiffs' claims. The defendants argue that the present action is barred by the equitable doctrine of laches.

### DISCUSSION

In support of their contention that the plaintiffs' action is barred by laches, the defendants initially argue that no federal statute specifically provides a time limitation concerning the Cayugas' claims. They

---

1. The court held that the Regional Rail Reorganization Act, 45 U.S.C. §§ 701–797, established a Special Court which had original, exclusive and sole jurisdiction to hear and determine the claims brought by the plaintiffs which challenged Conrail's legal title to certain rail lines

transferred to Conrail pursuant to the Rail Act and which were the subject of the present dispute. Accordingly, this court was without jurisdiction to hear plaintiffs' claims against Conrail. *Cayuga V,* 762 F.Supp. at 35–36.

allege that proof of the plaintiffs' attempts to enforce the "treaties" entered into between the Cayugas and the State of New York in 1795 and 1807 lends additional support to their position that this action is time-barred. They further argue that the education of the Cayugas, coupled with their proven ability to enforce their legal rights, demonstrates that the plaintiffs should no longer be afforded a protected status by the government. Finally, they claim that it would be inequitable to find in favor of the plaintiffs in light of the generations of individuals who have lived on the subject land since the purported conveyance of such land to the State of New York.[2]

The Cayugas claim that "this case was timely filed within the express statutory and regulatory framework established by Congress in 1982 to govern Indian land claims. *See* 2[8] U.S.C. § 2415; 48 Fed. Reg. 13698, 13920 (March 31, 1983)."[3] They argue that the language of 28 U.S.C. § 2415, the holding of the Supreme Court in *County of Oneida v. Oneida Indian Nation of New York*, 470 U.S. 226, 105 S.Ct. 1245, 84 L.Ed.2d 169 (1985), *reh'g denied* 471 U.S. 1062, 105 S.Ct. 2173, 85 L.Ed.2d 491 (1985) (*"County of Oneida"*), as well as the second circuit's decision in *Oneida Indian Nation of New York v. Oneida County*, 719 F.2d 525 (2d Cir.1983) (*"Oneida Indian Nation of New York II"*) all support their contention that the defense of laches is unavailable in Indian land claim cases.[4] Additionally, they contend that Justice Stevens' dissent in *County of Oneida*, as well as Judge Newman's statement in *Oneida Indian Nation of New York v. State of New York*, 860 F.2d 1145 (2d Cir.1988) (*"Oneida Indian Nation of New York III"*), lend further credence to their argument that laches is not a legally sufficient defense to their claims. Accordingly, a review of 28 U.S.C. § 2415, its legislative history, and the various decisions relied upon by both parties in support of their respective positions is in order.

28 U.S.C. § 2415(c) provides that there is no time limitation on claims which seek "to establish the title to, or right of possession of, real or personal property." Sections 2415(a) and (b) of this Title provide that actions brought by the United States on behalf of an Indian tribe which sounded in contract or tort, sought money damages, and accrued prior to July, 1966 were timely so long as such actions were commenced prior to December 31, 1982. *See, e.g., Oneida Indian Nation of New York II*, 719 F.2d at 538. The 1982 amendments to this statute also imposed a specific statute of limitations concerning certain tort and contract claims brought by Indian tribes themselves. *County of Oneida*, 470 U.S. at 242–43, 105 S.Ct. at 1256, 84 L.Ed.2d 169.

In *Oneida Indian Nation of New York II*, the second circuit was confronted by a land claim brought by the Oneida Indian Nation of New York, the Oneida Indian Nation of Wisconsin and the Oneida of the Thames Band Council (collectively referred to as the "Oneidas"). There, as here, the court was confronted by the argument that the claims of the Indian tribes were time-barred because the Oneidas' lawsuit was filed some 175 years after their cause of action had accrued. In finding this argu-

---

**2.** At oral argument, Assistant Attorney General David B. Roberts raised, for the first time, the State's argument that it was immune from plaintiffs' action under the eleventh amendment of the United States Constitution. The State argued that the Supreme Court's recent decision in *Blatchford v. Native Village of Noatak and Circle Village,* —— U.S. ——, 111 S.Ct. 2578, 115 L.Ed.2d 686, (1991) stands for the proposition that the State of New York, as sovereign, is immune from the instant action. Because the *Blatchford* decision was so recent, at the time oral argument was heard concerning the present motions, none of the parties had had the opportunity to submit any briefs to this court regarding the applicability, or lack thereof, of the *Blatchford* decision with respect to the present action. By letter dated July 23, 1991, the court invited the State to bring a formal motion concerning the issue of sovereign immunity before this court, thereby affording the parties the opportunity to fully present their respective arguments concerning the import of the *Blatchford* decision to this action.

**3.** Plaintiffs' memorandum in support of their motion for summary judgment ("Pl.Mem.") at 3.

**4.** Plaintiffs' Reply Memorandum ("Pl.Reply") at 3–4, 7–10.

ment to be without merit, the court, in discussing the *minimum* amount of time which Indian tribes are to be afforded in the filing of land claims, concluded that:

> "[A]t the very least, suits by tribes should be held timely if such suits would have been timely if brought by the United States." (quoting *Oneida Indian Nation of New York v. New York*, 691 F.2d 1070, 1084 (2d Cir.1982) ("*Oneida Indian Nation of New York I*")).

*Oneida Indian Nation of New York II*, 719 F.2d at 538. Since the Oneidas' action would have been timely had the same been brought by the United States on the plaintiffs' behalf pursuant to 28 U.S.C. § 2415, the court concluded that the Oneidas' action was timely. *Id.* While the Oneidas were apparently both impoverished and illiterate, *see Oneida Indian Nation of New York v. County of Cayuga*, 434 F.Supp. 527, 535–37 (N.D.N.Y.1977), the second circuit did not limit its holding to like Indian tribes. Nor did it claim, as the defendants would have this court hold, that its ruling was only applicable to non-litigious tribes, or tribes that did not seek to enforce their perceived right to compensation under their "treaties" with the State. In fact, to view the second circuit's ruling in *Oneida Indian Nation of New York II* to stand for this proposition would be, in this court's opinion, clearly erroneous. Under 28 U.S.C. § 2415, the United States was entitled to bring an action seeking money damages on behalf of any Indian tribe until December 31, 1982, notwithstanding such tribe's education, literacy or litigiousness. *Id.* As the second circuit noted, "[i]t would be anomalous to allow the trustee to sue un-der more favorable conditions tha[n] those afforded the tribes themselves." *Oneida Indian Nation of New York II*, 719 F.2d at 538 (quoting *Oneida Indian Nation of New York I*, 691 F.2d at 1083–84).

■ This court holds that the second circuit's decision in *Oneida Indian Nation of New York II* stands for the proposition that claims brought by Indian tribes in general, including the plaintiffs herein, should be held by courts to be timely, and therefore not barred by laches, if, at the very least, such a suit would have been timely if the same had been brought by the United States.[5]

The Supreme Court, in affirming in part and reversing in part the second circuit's holding in *Oneida Indian Nation of New York II*, discussed, *inter alia*, the legislative history surrounding 28 U.S.C. § 2415. In *County of Oneida*, the Supreme Court held that:

> The legislative history of the 1972, 1977, and 1980 amendments [to 28 U.S.C. § 2415] demonstrates that Congress did not intend § 2415 to apply to suits brought by the Indians themselves, and that it assumed that the Indians' right to sue was not otherwise subject to any statute of limitations....
>
> With the enactment of the 1982 amendments, Congress for the first time imposed a statute of limitations on certain tort and contract claims for damages brought by Indian tribes. These amendments, enacted as the Indian Claims Limitation Act of 1982, Pub.L. 97–394, 96 Stat. 1976, note following 28 U.S.C. § 2415, established a system for the final resolution of pre–1966 claims cognizable

---

5. The court notes that the mere fact that the Cayugas may have attempted to obtain additional compensation under the 1795 and 1807 "treaties" between these two parties did not, by itself, make these agreements legally enforceable treaties. As this court has already held, the United States, and the United States alone, has the legal power to consent to the alienation of tribal land. *See Cayuga III*, 730 F.Supp. at 488 (citing 25 U.S.C. § 177). The federal government never consented to the Cayugas' attempt to convey the subject land to New York in 1795 and 1807. *Id.* at 493. Any actions of the Cayugas to secure additional compensation pursuant to these invalid agreements did not magically transmogri-

fy such invalid agreements into valid treaties which ceded rights in the subject land to the State of New York.

With respect to the defendants' contention that the Cayugas should not be afforded any protected status by this court, this court has already held that their exists an especial trust relationship between the plaintiffs herein and the federal government. *Cayuga II*, 667 F.Supp. at 943. Thus, the defendants' argument that the Cayugas are somehow not to be afforded any protected status at the present time is contrary to the law of this case and clearly lacks substance.

under §§ 2415(a) and (b). The Act directed the Secretary of the Interior to compile and publish in the Federal Register a list of all Indian claims to which the statute of limitations provided in 28 U.S.C. § 2415 applied. The Act also directed that the Secretary notify those Indians who may have an interest in such claims. The Indians were then given an opportunity to submit additional claims; these were to be compiled and published on a second list.... If at any time the Secretary decides not to pursue a claim on one of the lists, *"any* right of action shall be barred unless the complaint is filed within one year after the date of publication [of the notice of the Secretary's decision] in the Federal Register." Pub.L. 97–394, 96 Stat.1978 § 5(c) (emphasis added). Thus, § 5(c) implicitly imposed a 1–year statute of limitations within which the Indians must bring contract and tort claims that are covered by §§ 2415(a) and (b) and not listed by the Secretary. *So long as a listed claim is neither acted upon nor formally rejected by the Secretary, it remains live.* County of Oneida at 242–43, 105 S.Ct. at 1255–56, 84 L.Ed.2d 169 (footnote omitted) (emphasis added).[6]

While the Supreme Court found that the time limits provided in §§ 2415(a) and (b) apply only to actions brought by the United States, and not to those lawsuits commenced by Indian tribes themselves, *see id.* at 242, 105 S.Ct. at 1255–56, 84 L.Ed.2d 169, the second circuit's determination that the time limitation provided by this statute is the *minimum* amount of time which must be afforded to Indian tribes which bring land claim actions on their own be-

half is still the law in this circuit. A fair reading of *Oneida Indian Nation of New York II* reveals that actions brought by Indian tribes may well be timely even *after* the time period available to the United States to bring such claims has passed pursuant to Section 2415; for that court's holding provides that, *at the very least,* suits brought by tribes are to be held timely if such suits would have been timely if such actions were brought by the United States. *Oneida Indian Nation of New York II,* 719 F.2d at 538. In fact, the vitality of this ruling was noted by Justice Stevens in his dissent in *County of Oneida.* Justice Stevens, joined by Chief Justice Berger, and Justices White and Rehnquist, recognized that "[t]he Court of Appeals' rejection of delay-based defenses, [discussed in] 719 F.2d [at 538] *will remain the law of the Circuit until it is reversed by this court, and will no doubt apply to the numerous Indian claims pending in the lower courts....*" *Id.* at 261–62 n. 10, 105 S.Ct. at 1265–66 n. 10, 84 L.Ed.2d 169 (emphasis added). One such lower court claim is the instant action.

This lawsuit was commenced by the Cayuga Indian Nation of New York on November 19, 1980, with the plaintiff-intervenor Seneca–Cayuga Tribe of Oklahoma joining this action in November, 1981. The instant action would have been timely if it had been brought by the United States by December 31, 1982. *See Oneida Indian Nation of New York II,* 719 F.2d at 538. Thus, it is apparent that this lawsuit was timely when filed by the plaintiffs, and that the defense of laches is unavailable to the defendants herein.[7]

■ The defendants also argue that:

**6.** At oral argument, both parties conceded that the Secretary of the Interior listed the Cayuga land claim as a § 2415 claim. *See* 48 Fed.Reg. 13698, 13920 (March 31, 1983). The Secretary of the Interior has taken no further action regarding this claim subsequent his listing of the same in the Federal Register. Therefore, under *County of Oneida,* this claim remained live. *County of Oneida,* 470 U.S. at 243, 105 S.Ct. at 1256, 84 L.Ed.2d 169.

**7.** In *Oneida Indian Nation of New York III,* Judge Newman stated, "[t]he writer accepts the prior panel's rejection of a laches defense as the

law of the case, though would find the issue to be a substantial one if it were open." *Oneida Indian Nation of New York III,* 860 F.2d at 1149 n. 1. The defendants argue that this comment demonstrates that laches is a viable defense to Indian land claim cases, and that the court's holding in *Oneida Indian Nation of New York II* is no longer the law in this circuit.

However, this court is unable to interpret Judge Newman's comment as standing for the proposition that the second circuit's holding in *Oneida Indian Nation of New York II* is no longer good law. As appealing as this argument

In the last 185 years, private and public landowners have settled, cultivated and developed the Subject Land without any legal challenge to their rights to the land. The Subject Land has substantially increased in value. Entire lifetimes of residence on this land have been invested. There have been literally generations of innocent purchasers of the property and like numbers of people abiding by the laws of the Federal and State governments, paying taxes and building a community on the subject land. If Plaintiff's claims are allowed to proceed, title to real estate in large portions of Cayuga and Seneca counties will be disrupted and landowners, who had no knowledge of the possible defect in their title at the time they purchased, will be irreparably harmed.[8]

However, as the second circuit stated in *Oneida Indian Nation of New York II,* "we know of no principle of law that would relate the availability of judicial relief to the gravity of the wrong sought to be addressed." *Oneida Indian Nation of New York II,* 719 F.2d at 539. "Rather, the courts have in numerous contexts treated as justiciable claims that resulted in wide-ranging and 'disruptive' remedies." *Oneida Indian Nation of New York I,* 691 F.2d at 1083. This reasoning applies with equal force to the facts herein. The defendants' motion cannot be granted even though this court's ruling may eventually cause disruption in Cayuga and Seneca counties.

## CONCLUSION

The law enunciated by the second circuit and the Supreme Court regarding the issue

presently before this court is clear. The plaintiffs' action, which was commenced in November, 1980 was timely. *See Oneida Indian Nation of New York II,* 719 F.2d at 538; *County of Oneida,* 470 U.S. at 243, 105 S.Ct. at 1256, 84 L.Ed.2d 169. Thus, the defense of laches is unavailable to any of the defendants in the present action, including the State of New York. No other defense to plaintiffs' action has been raised by any of the other defendants herein, except the State of New York.[9] Accordingly, the plaintiffs' motion for partial summary judgment on the issue of liability is granted as to all defendants except the State of New York.

IT IS SO ORDERED.

---

might be, in particular consideration of the at least equitable property rights of generations of landholders who have relied upon their apparent good title, it is for the second circuit or the Supreme Court to so rule, not this district court. As noted in 21 C.J.S. *Courts* § 187 (1940):

In determining a case the court is not concerned with what the law ought to be, but its sole function is to declare what the law, applicable to the facts of the case, is. A fortiori courts will not depart from an established rule of law to meet a particular case of supposed hardship. The rule of stare decisis is peculiarly applicable to a trial court.

*Id.* (footnotes omitted).

**8.** Defendants' memorandum in support of their motion for summary judgment at 20.

**9.** As stated *supra* at n. 2, the State of New York now contends that some or all of plaintiffs' claims against the State are barred by the eleventh amendment. In light of this position, the court has invited the State to make a formal motion relating to this argument to be heard by this court on October 15, 1991 at 11 a.m. in Syracuse, New York.