**GENERAL MOTORS CORPORATION, Plaintiff,**

v.

**Robert W. BLANCHETTE, Richard C. Bond, John H. McArthur, Trustees of Penn Central Transportation Company, and Consolidated Rail Corporation, Defendants.**

No. 77–38.

Special Court,

Regional Rail Reorganization Act.

May 30, 1979.

Gilbert W. Oswald, Bernard J. Smolens, Michael J. Mangan and Charles B. Blaking-

er, Philadelphia, Pa. (Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., of counsel), for plaintiff.

Paul R. Duke, Washington, D. C., Carl Helmetag, Jr., and Robert Szwajkos, Philadelphia, Pa., for defendant Trustees of Penn Central Transportation Co. and for Penn Central Corporation.

John G. Harkins, Jr., Philadelphia, Pa. (Laurence Z. Shiekman, Charles J. Bloom and Pepper, Hamilton & Scheetz, Philadelphia, Pa., of counsel), for defendant Consolidated Rail Corporation.

THOMSEN, Judge.

In this action General Motors Corporation (GM) seeks reimbursement from the Penn Central (PC) Trustees or Conrail of so much of the costs of constructing or improving tracks from a PC line into two GM plants in Detroit (pursuant to agreements with the Trustees approved by the PC reorganization court) as had been paid by GM originally and had not been repaid to GM by the Trustees before April 1, 1976.

The Trustees filed an answer, contending that this court lacks jurisdiction over the claim against them; they also cross-claimed against Conrail, contending that Conrail (and not the Trustees) is liable under the sidetrack agreements on the ground that the agreements were or should have been conveyed to Conrail along with the underlying rail property. That was also the basis of GM's claim against Conrail. Conrail moved under F.R.Civ.P. 12(b)(6) to dismiss GM's complaint, and filed an answer to the Trustees' cross-claim, seeking its dismissal. Later GM moved for summary judgment, the Trustees moved for dismissal of the complaint or for a stay of the proceedings against them pending determination in the reorganization court of their liability under the agreement, and Conrail cross-moved for summary judgment against GM. Oral argument has been waived by all parties, who have agreed that the case may be determined by one judge of this court.

On October 1, 1973, GM entered into a letter agreement with the Trustees for the construction of certain railroad-owned facilities to serve GM's plant located on Piquette Avenue. The Trustees were authorized to enter into that agreement by an order of the PC reorganization court, dated March 12, 1971. Pursuant to that agreement, GM advanced to the Trustees $86,486 for the construction of rail support track on the PC property to provide rail service to the Piquette Avenue plant. If that amount proved insufficient, GM agreed to pay promptly any excess costs. The Trustees agreed to repay any unexpended funds upon the completion of construction, and to refund to GM the amount of $20 for each car (certain types of shipments excepted) passing over the track and routed to or from a point outside local switching limits. The refunds were to continue for a period of five years, with one-year extensions thereafter until the entire amount advanced by GM had been repaid.

On July 15, 1974, GM entered into another agreement with the Trustees, this one for the construction of support yard facilities to furnish service to a new Cadillac shipping terminal located on Clark Avenue. That agreement had been approved by the PC reorganization court on July 11, 1974. Under the Clark Avenue agreement, GM advanced $684,137 to the Trustees for the construction on PC property of certain facilities deemed necessary for the railroad to provide adequate service to the Clark Avenue plant. The Trustees agreed to refund to GM the full amount of money advanced, by paying to GM $54.73 for each rail carload of motor vehicles handled over the new support yard facilities and routed to or from a point outside the local switching limits.

By letter dated February 25, 1976, the Trustees informed GM that PC would no longer be engaged in rail operations after the conveyance date (April 1, 1976, at 12.01 am.) and hence the refund agreement would be terminated. On April 1, 1976, pursuant to an order of this court under § 303(b) of the "Rail Act," as amended, 45 U.S.C.

743(b), the track and facilities in question were conveyed by the Trustees to Conrail. Until March 31, 1976, the Trustees had made refund payments to GM: $7,740 under the Piquette Avenue agreement, and $550,584.80 under the Clark Avenue agreement.

Since April 1, 1976, Conrail has operated trains over the facilities in question and has received the revenues attributable to these operations. However, for reasons discussed below, Conrail has denied liability for and refused to make any further refund payments.

As in the case of *Stratford Land & Imp. Co., Inc. v. Blanchette et al., Trustees and ConRail,* 448 F.Supp. 279 (Sp.Ct., R.R.R.A., 1978), the central dispute is whether the agreements between GM and the PC Trustees, particularly the provisions concerning refund obligations, were or should have been conveyed to Conrail along with the properties conveyed on April 1, 1976. In urging a negative answer Conrail relies on the Bill of Sale and Assignment between the Trustees and Conrail, a conveyance document certified to this court pursuant to § 209(c) of the Act and annexed to our conveyance order of March 25, 1976. That document provided in Schedule E, pertaining to executory contracts and agreements:

[T]he following contracts are expressly reserved and excepted from conveyance to Grantee and Grantee assumes no obligations in connection therewith:

&ast; &ast; &ast; &ast; &ast; &ast;

3. The following:

&ast; &ast; &ast; &ast; &ast; &ast;

c. Other contracts:

&ast; &ast; &ast; &ast; &ast; &ast;

14) SIDE TRACK AGREEMENTS

All industrial side track agreements, track construction or rehabilitation agreements and marine or intermodal terminal development agreements which require the payment of refunds

per car, trailer or container to any person, firm, association, cooperative, etc.

GM argues that this language does not encompass its agreements with the Trustees; that if it does, the exception is ineffective because it conflicts with the designations of the Final System Plan (FSP); that Conrail in any case is liable under common law and equitable doctrines; and that if this court should find that Conrail is not liable under the agreements, then the Trustees must be. The Trustees join in arguing that Conrail is liable but insist that, if this court decides otherwise, their own obligations under the agreement may not be adjudicated in this court.

■ GM and Stratford filed a common brief in this court and relied upon the same points in support of their respective claims. The reasons stated by us in the *Stratford* case for denying the relief sought by Stratford apply also in this case. Those reasons are set out in 448 F.Supp. at 283–87; they need not be repeated here.

■ Rejecting the argument advanced by Stratford that this court should exercise its ancillary jurisdiction over the Trustees in order to decide the entire case, we noted that the bankruptcy court had considered and in effect approved the agreement we were asked to interpret. 448 F.Supp. at 286–87. In this case one of the GM agreements was covered by a general order, while the other was specifically approved. The conclusion in *Stratford* that we should dismiss Stratford's complaint against the Trustees for want of jurisdiction applies also in this case.[1]

The complaint of GM and the cross-claim of the Trustees against Conrail are dismissed for failure to state a claim upon which relief may be granted. GM's claim against the PC Trustees is dismissed for want of jurisdiction. The Clerk will enter judgment accordingly.

---

1. It may be noted that on October 10, 1978, both Stratford and GM filed petitions in the PC reorganization court, seeking allowance of the payments provided for in their agreements.

See Corporate Reorganization Reporter (Penn Central), Document Nos. 16495 and 16496, Section 341:2962–63.