533 F.Supp. 1351 (1982)
CONSOLIDATED RAIL CORPORATION, Relco-Pa., Inc. and Investors Diversified Services, Inc.
v.
The PENN CENTRAL CORPORATION.
Civ. A. No. 81-9.
Special Court, Regional Rail Reorganization Act.
February 2, 1982.
*1352 Laurence Z. Shiekman, Steven D. McLamb and Pepper, Hamilton & Scheetz, Philadelphia, Pa., for plaintiffs.
Jeffrey R. Lerman, John M. Bernard, John E. Caruso, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., Paul R. Duke, Covington & Burling, Washington, D. C., and Terrence M. Quirin, Philadelphia, Pa., for defendant.
Before FRIENDLY, Presiding Judge, and WISDOM and THOMSEN, Judges.
PER CURIAM:
Consolidated Rail Corporation (Conrail), Relco-Pa., Inc. (Relco), and Investors Diversified Services, Inc. (IDS) bring this action for a declaratory judgment that the March 26, 1976 conveyance order of this court conveyed to Conrail all of Penn Central's right, title and interest in a lease of certain railroad equipment dated January 1, 1960, "including all right to the entire adjustment of rental" provided in the lease and that "Penn Central has no right, title or interest whatsoever in said equipment or lease." Relco and IDS have moved this court for a "stay of certain proceedings" in an action brought by Penn Central against Relco and IDS in the United States District Court for the Eastern District of Pennsylvania. Specifically, Relco and IDS ask this court to enjoin the district court proceedings "to the extent, and only to the extent, that the district court is requested or required to adjudicate whether [Conrail] is entitled to any portion of the `adjustment of rental' set forth" in the lease. Penn Central opposes the motion for a stay on the ground that none of the issues raised in the district court fall within the original and exclusive jurisdiction of this court. We agree with the plaintiffs and shall enter an appropriate stay. First, however, we deem it necessary to consider, as a threshold question, whether we have jurisdiction of the declaratory judgment action.

I.
The controversy arises out of a twenty-year lease between Relco, as lessor, and the Pennsylvania Railroad Company, as lessee, of 4,000 hopper cars. At the time that lease was executed, Relco was a wholly-owned subsidiary of IDS. During the period between January 1, 1960 and March 31, 1976, the Pennsylvania Railroad Company and its successor, Penn Central, used the railroad equipment and paid the required rentals. As required by our conveyance order of March 25, 1976, the trustees of Penn Central and Conrail entered into an Assignment of Rolling Stock and Equipment, dated March 31, 1976. During the period from April 1, 1976 to February 29, 1980, Conrail held all leasehold rights to the use of the cars and made the rental payments.
On February 25, 1980, Conrail and IDS entered into an agreement for the purchase by Conrail of 100% of the common stock of Relco, and on March 28, 1980, Conrail acquired the stock for $6.1 million. On the day of acquisition, Relco extended the lease for a term of ten years.
Shortly thereafter, Penn Central filed suit against Relco in the United States District Court for the Eastern District of Pennsylvania, claiming that the lease extension was "wrongful" because, inter alia, it had the effect of depriving Penn Central of certain payments to be made to the lessee at the termination of the lease as an "adjustment of rental" corresponding to the period Penn Central or its predecessor was lessee. On September 19, 1980, Penn Central filed suit in the same district court against IDS, alleging that IDS is liable to Penn Central because, inter alia, the sale of Relco by IDS to Conrail had the effect of depriving Penn Central of its portion of the adjustment of rental. Penn Central argues that the failure of IDS and Relco to pay the adjustment of rental to Penn Central breaches contractual and fiduciary duties owed by IDS and Relco to Penn Central. The two cases have been consolidated for trial. At this point, Conrail, Relco, and IDS *1353 brought this action and requested that we grant a partial stay of the district court proceedings.

II.
Section 209(e)(2) of the Rail Act, 45 U.S.C. § 719(e)(2), provides in pertinent part:
The original and exclusive jurisdiction of the special court shall include any action, whether filed by any interested person or initiated by the special court itself, to interpret, alter, amend, modify, or implement any of the orders entered by such court pursuant to section 303(b) of this Act in order to effect the purposes of this Act or the goals of the final system plan.
This court made it clear in Consolidated Rail Corp. v. State of Illinois, Sp.Ct.R.R. R.A. 1977, 423 F.Supp. 941, 948, cert. denied, 429 U.S. 1095, 97 S.Ct. 1111, 51 L.Ed.2d 542 (1977), that not every challenge "relating to the [Rail] Act" is within its exclusive jurisdiction. This court has exclusive jurisdiction where resolution of the dispute involves the court's "central functions." Consolidated Rail Corp. v. Pittsburgh & Lake Erie Railroad Co., Sp.Ct.R.R. R.A. 1978, 459 F.Supp. 1013, 1017. See also Stratford Land & Improvement Co., Inc., v. Blanchette, Sp.Ct.R.R.R.A. 1978, 448 F.Supp. 279; and General Motors Corp. v. Blanchette, Sp.Ct.R.R.R.A. 1979, 470 F.Supp. 866.
Penn Central contends that, because its action in the district court does not challenge the Rail Act, the final system plan (FSP), or this court's conveyance order, this court has no jurisdiction. That view, though, approaches the problem from the wrong perspective. To determine whether we have jurisdiction in the declaratory judgment action, we must examine the issues raised in that action and not the issues raised in a proceeding before another court.[1] Conrail, Relco, and IDS have asked us to declare that our order of conveyance and the assignment executed thereunder included the rental adjustment along with the leasehold interest of Penn Central.
The interpretation of a conveyance order is clearly within the exclusive original jurisdiction of this Court. § 209(e)(2).[2] Our jurisdiction to interpret the conveyance document itself is not as obvious. Nonetheless, we are convinced that we have jurisdiction to consider at least some aspects of that instrument. Section 209(e)(2), set out earlier, gives us jurisdiction over any action to implement our orders. It is true that the plain language and the legislative history of the provision demonstrate that that grant of jurisdiction is not all-encompassing. The Conference Committee deleted the Senate bill's grant of jurisdiction over any action to challenge, enforce, or declare rights under the Rail Act. In explanation, the Committee *1354 stated, "Many actions covered by this provision undoubtedly would be within the exclusive jurisdiction of the special court under other provisions of this bill, but still others may be of no concern to the central functions of the special court..." S.Rep.No. 94-595, 94th Cong., 2d Sess. 187-88, reprinted in [1976] U.S.Code Cong. & Ad.News 14, 148, 202-03; see generally Consolidated Rail Corp. v. Pittsburgh & Lake Erie Railroad Co., Sp.Ct.R.R.R.A. 1978, 459 F.Supp. 1013, 1016-17. The interpretation of the conveyance document here is, at least to some extent, within the central functions of this court, for it involves the implementation of our conveyance order.[3]
We find abundant support for this conclusion in our prior cases. In particular, in Stratford Land & Improvement Co., Inc. v. Blanchette, Sp.Ct.R.R.R.A. 1978, 448 F.Supp. 279, the Penn Central was obligated to make refund payments to the Stratford Land & Improvement Co. measured by the revenue yielded by each railroad car travelling over a certain segment of track. The track was conveyed to Conrail, and Stratford sought to enforce the refund obligation against Conrail. The court interpreted the conveyance document and found that the Penn Central did not convey the obligation along with the track. Accord, General Motors v. Blanchette, Sp.Ct.R.R. R.A. 1979, 470 F.Supp. 866, 868. A similar situation arose in Consolidated Rail Corp. v. Pittsburgh & Lake Erie Co., Sp.Ct.R.R.R.A. 1978, 459 F.Supp. 1013. There, Conrail sought a declaratory judgment that a conveyance order and the assignment of trackage rights gave the Pittsburgh & Lake Erie only the right to provide certain services and not others. We exercised jurisdiction, saying:
It suffices to sustain our jurisdiction here that Conrail's complaint raises substantial questions with respect to the interpretation of the FSP and our conveyance orders themselves and not merely of the operating rights grant and the implementing agreement.... Interpreting the instruments here at issue so as to give effect to the intention formulated by USRA and approved by Congress is within `the central functions' of this court  a function which we may not delegate to others, however much we might prefer to do this.
Id. at 1017-18. Again, in Trustees of the Property of Penn Central Transportation Co. v. United States Railway Association, Sp.Ct.R.R.R.A. 1979, 463 F.Supp. 1321, we took jurisdiction to determine whether conveyance documents transferred title to properties subject to state condemnation proceedings. We viewed "[t]hese actions to interpret or implement the conveyance documents affecting the appropriated properties as falling "exactly within the statutory grant." Id. at 1323. See also Consolidated Rail Corp. v. National Rail Passenger Corp., Sp.Ct.R.R.R.A. 1977, Sp.Ct.Rptr. D58-6,9; In re Erie Lackawanna Railroad, 6 Cir. 1977, 563 F.2d 784, 792-93.[4]
*1355 The action brought by Conrail, Relco, and IDS thus raises questions the resolution of which is among our central functions. Consequently, we must take jurisdiction.

III.
Satisfied that we have jurisdiction over the declaratory judgment action, we turn to the specific motion currently before us. Relco and IDS have requested us to stay the proceedings pending against them in the district court, to the extent that the district court is required to adjudicate whether Conrail is entitled to any portion of the adjustment of rental.
Under section 209(g) of the Rail Act, 45 U.S.C. § 719(g), this court is empowered to stay any proceeding in any lower federal court "if such proceeding is contrary to any provision of this Act, impairs the effective implementation of this Act, or interferes with the execution of any order of the special court pursuant to this Act." Our holding in Part II that we have exclusive jurisdiction over the question raised by Conrail's, Relco's, and IDS's declaratory judgment action necessarily implies that a stay is appropriate; any proceeding in another court on that question is contrary to the provision of the Rail Act giving us exclusive jurisdiction, section 209(e)(2).
Penn Central suggests that we should not grant the stay because its action in the district court is not in the exclusive jurisdiction of this court. Admittedly, that action is not within the jurisdiction of this court; the questions regarding the fiduciary duties of Relco and IDS to Penn Central are indeed far removed from our "central functions". But that the entire action is not within our jurisdiction need not prevent us from granting a stay of proceedings on one issue in that action.
Nor do we perceive any problem arising out of the posture of the parties in the district court action. There, if, as it states that it will, Penn Central adheres to its position taken here, not questioning this court's orders or the FSP, the interpretation of the orders and the FSP will arise only as a defense. But, as we have discussed above, we think that the interpretation of the conveyance document itself in this case presents a controversy within our exclusive jurisdiction. Even were that not the case, the "well-pleaded complaint" rule, barring the invocation of jurisdiction on the basis of an anticipated defense, see Louisville & Nashville Railroad Co. v. Mottley, 1908, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126; 13 C. Wright & A. Miller, E. Cooper, Federal Practice and Procedure § 3566 (1975), would not preclude the stay. The question has been raised in the complaint in this court, so we have jurisdiction. In addition, the well-pleaded complaint rule applies to federal question jurisdiction; we have not found it applicable to the grant of jurisdiction under the Rail Act. See Consolidated Rail Corp. v. National Rail Passenger Corp., Sp.Ct.R.R.R.A. 1977, Sp.Ct.Rptr. 58-6,9; Consolidated Rail Corp. v. Illinois, Sp.Ct.R. R.R.A. 1976, 423 F.Supp. 941, cert. denied, 429 U.S. 1095, 97 S.Ct. 1111, 51 L.Ed.2d 542 (1977) (dictum).
We do, however, see some merit in Penn Central's argument that the declaratory judgment action should be expedited, for the motion for stay was filed on the eve of trial, after two postponements of the trial *1356 date. Accordingly, we grant the request for an expedited schedule and shall enter appropriate orders.
NOTES
[1] We perceive no problem in permitting the plaintiffs to bring a declaratory judgment action even when we view this action apart from the backdrop of the district court action. The complaint shows that all of the acts alleged to create liability have already occurred, and we are therefore presented with "a case of actual controversy," as required by 28 U.S.C. § 2201. See Bruhn v. STP Corp., D.Colo.1970, 312 F.Supp. 903 (dictum); C. Wright & A. Miller, 10 Federal Practice and Procedure § 2757 (1973); see also Kiser v. Johnson, M.D.Pa.1975, 404 F.Supp. 879, 886 ("If there exist contingencies that must occur before an issue is actually joined by the parties, then the case will not be ripe until those contingencies occur.")
[2] We have noted before the ambiguity in the first sentence of § 209(e)(2):

The original and exclusive jurisdiction of the special court shall include any action, whether filed by any interested person or initiated by the special court itself, to interpret, alter, amend, modify, or implement any of the orders entered by such court pursuant to section 303(b) of this Act in order to effect the purposes of this act or the goals of the final system plan.
The "in order to" clause may modify either "any action" or "any of the orders." See Consolidated Rail Corp. v. Pittsburgh & Lake Erie R.R. Co., Sp.Ct.R.R.R.A. 1978, 459 F.Supp. 1013, 1016 n.2. But whichever construction we adopt, the action here qualifies. The order subject to interpretation was one of the conveyance orders that carried out the FSP; obviously the order was entered "in order to effect the goals" of the FSP. And the case before us was brought to interpret the conveyance order and the FSP; proper interpretation will also "effect the purposes of [the] Act or the goals" of the FSP.
[3] Penn Central notes that the stake here  a "rental adjustment"  is simply a cash receivable; no one questions the scope of the conveyed interest in the hopper cars. But it expressly disavows any contention that the special court was without power to order the conveyance of the rental adjustment. Because we cannot see any other significance in the point, we think it appropriate to address that contention. Under § 303(b) of the Act, 45 U.S.C. § 743(b), we have the power to order the conveyance of rail properties identified in the FSP. The term rail properties is defined in § 102(12), 45 U.S.C. § 702(12), as "assets or rights...which are used or useful in rail transportation service". Rail properties include the bundle of rights and obligations embodied in a contract, Stratford Land & Improvement Co., Inc. v. Blanchette, Sp.Ct.R.R.R.A. 1978, 448 F.Supp. 279, 284 n.4; see also Trustees of the Property of Penn Central Transportation Co. v. United States Rail Association, Sp.Ct.R.R.R.A. 1979, 463 F.Supp. 1321, 1324.
[4] Of course, we do not suggest that every contract claim that "bear[s] a relation to the Act" is within our original and exclusive jurisdiction. See Consolidated Rail Corp. v. Illinois, Sp.Ct.R. R.R.A. 1976, 423 F.Supp. 941. It would not be appropriate at this time, when the issue is not presented, to attempt to delineate the exact bounds of those contract claims not within our jurisdiction. Our decision in Michigan Interstate Ry. v. Grand Trunk Western R.R. Co., Sp.Ct.R.R.R.A. 1978, 459 F.Supp. 1008, provides one example. There, we lacked jurisdiction over a claim arising out of a trackage rights agreement concluded by two profitable railroads that received properties under the FSP, even though USRA had recommended that the railroads execute such an agreement and had included that recommendation in an appendix to the FSP. Similarly, if a claim arose implicating solely issues of contract law  for example, if the parties agreed on liability and the only contested issue was the measure of damages  we might be without jurisdiction. Finally, if Conrail entered into an agreement for purchase of properties independent of the agreement for conveyance directed in our order, disputes involving that agreement would not be within section 209(e)(2). It would be difficult to establish that such a transaction was embodied in a single contract along with a conveyance ordered by this court. The separate consideration for the separate properties would have to be stated, given the accounting obligations of Conrail and USRA under § 307, 45 U.S.C. § 747, and the property would have to be outside the FSP, itself a determination we would make.