814 F.Supp. 1116 (1993)
PENN CENTRAL CORPORATION, Plaintiff,
v.
UNITED STATES of America, Consolidated Rail Corporation, Southeastern Pennsylvania Transportation Authority and National Railroad Passenger Corporation, Defendants.
Civ. A. No. 92-1.
Special Court, Regional Rail Reorganization Act of 1973.
February 9, 1993.
*1117 Louis A. Craco, John R. Oller, Lorni Staal Rosen, Wilkie Farr & Gallagher, Kenneth N. Hart, James J. Capra, Marianne Santangelo, Donovan Leisure Newton & Irvine, New York City, for plaintiff Penn Cent. Corp.
Vicki A. O'Meara, Acting Asst. Atty. Gen., Stephen M. Johnson, Christopher S. Vaden, Attorneys, U.S. Dept. of Justice, Environmental and Natural Resource Div., Washington, DC, for defendant U.S.
Laurence Z. Shiekman, M. Duncan Grant, Brian T. Ortelere, Suzanne Forbis, Pepper, Hamilton & Scheetz, Philadelphia, PA, for defendant Consol. Rail Corp.
Joseph A. Dworetzky, Thomas J. Leach, Bonnie A. Barnett, Seamus C. Duffy, Drinker, Biddle & Reath, Philadelphia, PA, for defendant Southeastern Pennsylvania Transp. Authority.
J. Brian Molloy, Douglas H. Green, Piper & Marbury, Stephen C. Rogers, Dennis M. Moore, Amtrak Law Dept., Washington, DC, for defendant Nat. R.R. Passenger Corp.
Before WISDOM, GASCH, and GREEN[*], JJ.

MEMORANDUM OPINION
WISDOM, Presiding Judge:
This action raises an important question relating to the Special Court's exclusive jurisdiction to interpret its conveyance orders, the Final System Plan ("FSP"), and the Regional Rail Reorganization Act of 1973 (the "Rail Act").[1] Penn Central Corporation filed suit in this court against the United States for a declaratory judgment and for a permanent injunction against the enforcement of liability under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), as amended by the Superfund Amendments and Reauthorization Act of 1986[2] for its pre-conveyance activities at two rail yards. Consolidated Rail Corporation ("Conrail"), the Southeastern Pennsylvania Transportation Authority ("SEPTA"), and the National Railroad Passenger *1118 Corporation ("Amtrak") filed counterclaims against Penn Central and cross-claims against the United States. The government moved under Fed.R.Civ.P. 12(b)(1) to dismiss Penn Central's complaint along with the other railroads' cross-claims for lack of subject matter jurisdiction. Without deciding the substantive issues raised in the complaint, counterclaims, and cross-claims, we hold that we have exclusive jurisdiction to hear this case. Therefore, we deny the government's motion to dismiss.

I. Factual Background
This case arises out of a dispute between the government and Penn Central, Conrail, Amtrak, and SEPTA over who should bear the costs of environmental cleanup of two PCB[3]-contaminated rail yards, owned and operated at different times by the various railroads. The rail yards in question are located in two different states: the Paoli yard is located in Paoli, Pennsylvania and the Elkhart yard in Indiana. Penn Central owned and operated both yards from 1915 to 1976 when they were transferred to Conrail in accordance with a conveyance order of this court. Immediately thereafter, Conrail transferred the Paoli yard to Amtrak, which has remained the sole owner to this date. By agreement with SEPTA, however, Conrail remained the operator of the commuter rail services at the Paoli yard until January 1983, at which time SEPTA assumed operations. Conrail has remained the sole owner and operator of the Elkhart yard since 1976.
In 1986, the government filed suit in the Eastern District of Pennsylvania against Conrail, SEPTA, and Amtrak for CERCLA cleanup costs relating to the Paoli yard. Later, in 1990, the government filed suit against Conrail in the Northern District of Indiana to recover similar costs relating to the cleanup of the Elkhart yard. In response, Conrail, SEPTA, and Amtrak filed counterclaims against Penn Central for contribution and cross-claims against the government.
In addition to filing suits in the district courts, the government petitioned the Penn Central Reorganization Court for leave to assert CERCLA claims against Penn Central. The court denied the government's petition; however, the Third Circuit reversed.[4] The Court held that any potential CERCLA claims had not been discharged in the bankruptcy proceedings; thus, the government was free to pursue its claims.[5] In response to this decision, Penn Central immediately filed suit in this court seeking declaratory relief based on the 1976 conveyance order, the 1980 settlement agreement between itself and the government in the Valuation Case,[6] the conveyance documents issued pursuant to the conveyance order, the FSP, and the Rail Act. The government now moves to dismiss this action for lack of subject matter jurisdiction.
This is not the first time these rail yards have been the subject of litigation in this court; they were included in the properties transferred in 1976 by Penn Central to Conrail under this court's conveyance order. The determination of the Net Liquidation Value of the properties which were conveyed to Conrail in accordance with the FSP was the subject of extensive negotiation and litigation.[7] On November 16, 1980, the government and Penn Central entered into a settlement agreement as to the value of the rail properties, which this court approved by order issued on December 5, 1980. A final judgment dismissing all other claims of the parties was entered on January 15, 1981.

*1119 II. Jurisdictional Grant of Section 209(e)(2)[8] of the Rail Act
Section 209(e)(2) provides:
The original and exclusive jurisdiction of the special court shall include any action, whether filed by any interested person or initiated by the special court itself, to interpret, alter, amend, modify, or implement any of the orders entered by such court pursuant to section 303(b) of this title in order to effect the purposes of this chapter or the goals of the final system plan....
The plain language of this statute requires this court to exercise its exclusive jurisdiction to decide this case. Penn Central along with the cross-claiming railroads has asked this court to interpret the conveyance order issued pursuant to the FSP as well as the final settlement agreement between the government and Penn Central regarding valuation and determine whether CERCLA liability is proper and if so how it should be apportioned under the FSP and the conveyance order. An action to resolve this issue falls squarely within the jurisdictional grant of Section 209(e) of the Rail Act.
Although we have never before considered the relationship between CERCLA and the Rail Act, we have defined the scope of our jurisdiction. In Consolidated Rail Corp. v. Pittsburgh & L.E. R. Co., this court propounded the general rule that it has exclusive jurisdiction over actions involving the "central functions" of the Special Court.[9] In reference to a trackage rights dispute, the court concluded that although not every dispute involving the instruments executed pursuant to the court's conveyance orders falls within its jurisdiction, when interpretation of these instruments entails a determination of what the FSP was meant to accomplish, the case falls within the central functions of the Special Court and its jurisdiction is exclusive.[10] The question in Consolidated Rail Corp. v. Pittsburgh & L.E.R. Co. centered "on the nature and extent of the privileges conveyed" by a trackage agreement between the parties.[11] Although this inquiry centered around the conveyance instruments, the court found jurisdiction under § 209(e)(2) in the need to "give effect to the intention formulated by USRA and approved by Congress".[12] The court held that this type of determination fell within the "central functions" of the Special Court.[13]
Once again in Consolidated Rail Corp. v. Penn Central Corp., although the court noted that it does not have jurisdiction to hear every case interpreting conveyance documents,[14] the interpretation of a conveyance order was within the exclusive jurisdiction granted by § 209(e)(2).[15] The court based its jurisdiction under § 209(e)(2) on the fact that it was necessary to interpret the conveyance order as well as the provisions of the conveyance documents to resolve the dispute.
Both Consolidated Rail Corp. v. Pittsburgh & L.E.R. Co. and Consolidated Rail Corp. v. Penn Central Corp. are similar to the present case. Penn Central alleges that the "as is" provision in the conveyance documents precludes further liability on its part.[16] The resolution of this issue can be found only by interpreting the language of the 1976 conveyance order in the light of the purposes of the FSP. In addition, Conrail argues that *1120 the conveyance order itself expressly apportions liability between it and Penn Central in spite of the language of the conveyance documents. Thus, the dispute requires an interpretation of the conveyance order as well as the attending documents and, therefore, falls within the exclusive jurisdiction of this court.
In Trustees of the Property of Penn Central Transportation Co. v. United States Railway Association, this court again took jurisdiction over a dispute involving the construction of conveyance documents.[17] The court held that a dispute over whether certain conveyance documents transferred title to properties subject to state condemnation proceedings fell "exactly within the statutory grant [of § [**] 209(e)(2)]".[18] This case further illustrates that this court can and should exercise jurisdiction under § 209(e)(2) over disputes that require it to interpret conveyance documents in light of an earlier conveyance order.
Similarly, Conrail, SEPTA, and Amtrak anticipate and rely on this court's interpretation of the conveyance order and the deeds executed in accordance with the order to support their claims against Penn Central for contribution, should they be required to pay CERCLA costs. In the alternative, SEPTA requests that if this court decides that CERCLA liability cannot be imposed on Penn Central because of its settlement agreement with the government, the portion Penn Central would otherwise have borne be subtracted from the total cleanup costs, relieving the other railroads from the burden of paying costs necessitated by Penn Central's pre-conveyance actions. We find that this claim falls within our exclusive jurisdiction as well.
Penn Central also alleges that its 1980 settlement agreement with the government settled all claims between it and the government and that this court's dismissal order made as a result of the settlement was intended to preclude later liability arising from the properties valued in the settlement. Once more we are required to interpret our own order to resolve the claim. Although this court may ultimately deny all of the relief Penn Central seeks, it is hardly questionable that such a determination can be made only by this court. Further, apportioning the liability of Penn Central and the post-conveyance railroads necessitates interpretation of the conveyance documents in the light of the purposes of the conveyance order and settlement agreement.
The government's arguments do not directly address the jurisdiction issue. The government argues that under CERCLA precedent, an "as is" provision in a deed of sale cannot serve to preclude CERCLA liability. This entire argument presupposes that Penn Central's claims arise under CERCLA. It presumes that the conveyance order has no special meaning or effect on the instruments executed pursuant to it. This may in fact be this court's ultimate determination; however, such a decision can be made only by this court. The issue is not whether any "as is" provision in any conveyance deed has preclusive effect under CERCLA alone; rather, the issue is whether the "as is" provisions in the conveyance documents issued pursuant to this court's order are preclusive in the light of the purposes and intent behind the FSP.
The government makes the same mistake regarding the effect of the 1980 settlement agreement and the dismissal order issued as a result. It contends that the present dispute has nothing to do with the settlement agreement because the settlement did not contemplate environmental liabilities and occurred before the enactment of CERCLA. This is a substantive argument against Penn Central on the merits, not an argument for this court's lack of jurisdiction to decide the matter. This court has exclusive jurisdiction to interpret the settlement agreement.
Each of the government's arguments overlooks the function of a 12(b)(1) motion to dismiss for lack of jurisdiction. The government proceeds as if it is seeking summary judgment on the substantive issues. On a motion to dismiss for lack of subject matter jurisdiction, this court must look at the claims asserted in this court, not at claims *1121 pending in some other court.[19] It is irrelevant whether CERCLA will ultimately control the outcome of the actions in the district courts. What is relevant are the issues raised by Penn Central regarding the interpretation of the FSP and the conveyance order and instruments executed to carry out the FSP. These issues relate to the central functions of this court and are, therefore, within the jurisdiction of this court.
Consolidated Rail Corp. v. Illinois[20] provides additional support for our exercise of jurisdiction in this case. In Illinois, the court stated that although not every case relating to the Rail Act will fall within its exclusive jurisdiction, "those where the critical nature of the determination demands the consistent interpretation possible only when review is concentrated in a single court" do fall within its exclusive jurisdiction.[21] The government argues that if forced to litigate in this court, it will waste valuable resources better used to clean the environment. This argument cuts against the government in this case. The issues raised in Penn Central's complaint can either be decided once and for all by this court, or again and again by district courts sitting in several different circuits. Resolution of the issues by this court will save the government time and money.
Further, if the need for consistency is to be considered at all, it demands that we take jurisdiction over this case. The government has already brought suit against the railroads in two different district courts sitting in two different circuits; these courts are faced with interpreting the conveyance order and its accompanying instruments to decide whether CERCLA liability can be imposed on Penn Central for pre-conveyance contamination. The government has made it quite clear that it will be pursuing Penn Central for the same cleanup costs in the very near future.[22] We cannot allow a number, perhaps a large number, of district courts independently to interpret this court's order. Even if the potentially inconsistent results were not a problem, section 209 grants exclusive jurisdiction to hear these types of claims.

III. Section 209(e) in the Light of CERCLA Section 113(b)
Section 113(b) of CERCLA provides: "the United States district courts shall have exclusive original jurisdiction over all controversies arising under this chapter".[23] The government argues that this court is not allowed to hear this case because this section vests exclusive jurisdiction in the district courts. This assertion begs the question.[24] Penn Central's complaint asserts claims requiring this court to interpret the final settlement agreement and dismissal order, the FSP, the conveyance order, and the instruments executed under this plan. These claims arise under the Rail Actnot under CERCLA. Thus, section 113(b) does not apply; rather, section 209(e) of the Rail Act governs.

IV. Section 113(h) of CERCLA and the Jurisdictional Grant of Section 209(e) of the Rail Act
Section 113(h) states that no federal court shall have jurisdiction to review any challenges to a removal or remedial action taken under CERCLA unless the government has first moved to recover expenses or compel remedial action in that court.[25] *1122 Based on this provision, the government argues that this court has been divested of the jurisdiction it would otherwise have had over this action because hearing the case at this point would constitute pre-enforcement judicial review barred by § 113(h).
Once again, the resolution of this argument turns on how this court characterizes the issues Penn Central has raised. We have determined that Penn Central's claims arise under the Rail Act and implicate the central functions of the Special Court. They therefore fall within the exclusive jurisdiction of the Special Court. We are extremely hesitant to hold that CERCLA repeals this jurisdiction by implication.
In its brief, the government never addresses the jurisdictional grant of section 209(e); rather, it points to the large body of case law holding that CERCLA bars pre-enforcement review.[26] In Voluntary Purchasing Groups, Inc. ("VPG") v. Reilly, the plaintiff received notification that it was a potentially responsible party.[27] As a result, the plaintiff filed suit in the Northern District of Texas seeking a declaration that it was not liable for CERCLA cleanup costs because its operations had not been responsible for the contamination. Subsequent to VPG's filing suit in the Northern District, the EPA filed suit in the Southern District of Texas to recover costs from VPG. The Fifth Circuit held that § 113(h) barred review by the Northern District Court and dismissed for lack of subject matter jurisdiction.[28] The government contends that VPG is controlling and stands for the proposition that no court can ever decide any issue that would bear on a later enforcement action filed by the EPA.
We distinguish VPG on two grounds. First, the VPG claim required an interpretation of the meaning of CERCLA and its effects, not of the meaning of the FSP and a conveyance order issued under the Rail Act. Second, in VPG, the plaintiff was able to pursue its claim in another district court. Dismissal for lack of jurisdiction essentially just consolidated the two cases pending in different district courts in Texas. In this case, the claims asserted by Penn Central and the other railroads can be decided only in this court. No district court has the power to interpret the conveyance order or the Valuation Case and its corresponding settlement agreement. For these issues, this court is the only forum.
Although there is extensive authority for the government's contention that CERCLA § 113(h) ordinarily prevents suits based on other statutes before any suit is filed by the government, we find those authorities inapplicable to this case. In Werlein v. United States, faced with a challenge to EPA remedial action under the Clean Water Act and the Resource Confirmation and Recovery Act, the court held that § 113(h) barred suit under these statutes.[29] The court found that this type of action would interfere with cleanup under CERCLA because it was a direct challenge to the methods chosen by the EPA *1123 to correct the contaminated site.[30]
Similarly, in Boarhead v. Erickson,[31] the Third Circuit refused to hear a challenge to an EPA remedial plan based on the National Historic Preservation Act. The court noted that, "Congress could hardly have chosen clearer language to express its intent generally to deprive the district court of jurisdiction over claims based on other statutes when the EPA undertakes the cleanup of toxic wastes at a Superfund site".[32] The government uses this strong language to argue that a suit under the Rail Act would also be precluded by § 113(h). These cases are inapposite. All involved a direct challenge to the EPA's cleanup proceduresnot at issue in the proceeding before us. Further, none of these statutes vests exclusive jurisdiction in one court to hear claims arising out of the statute in question. Each of the claims that was dismissed in the actions was allowed as a defense in a subsequent action by the EPA to recover costs. Here, the district courts are not empowered to interpret our orders entered under the FSP and the Rail Act. Thus, the claims cannot be raised as defenses in the district courts.
We find authority in the bankruptcy context for our exercise of jurisdiction in spite of the authority cited by the government. In Manville Corporation v. United States[33] and in In re Chateaugay,[34] the bankruptcy courts found that § 113(h) did not bar their review of claims that CERCLA liability had been discharged in bankruptcy. The court heard the cases in spite of the fact that no recovery action had been brought by the EPA. Both courts held that "pre-enforcement review" is not barred where the court is not called upon to review challenges to some remedial or removal action by the EPA. These holdings are consistent with the plain language of § 113(h), which bars review of "removal or remedial actions". In Manville, the court stated that CERCLA "must yield in situations not within its reach".[35] What holds true for the exclusive jurisdiction of the bankruptcy courts also holds true for the exclusive jurisdiction of this court as well.
The government contends that these cases should be restricted to the bankruptcy context.[36] It argues that the Bankruptcy Code's policy of providing a "fresh start" was the sole reason the courts asserted jurisdiction over the cases. Without committing the court to a statement on the substantive issues, we point out that this argument ignores the possibility that we may eventually find that the FSP and conveyance order also had a "fresh start" policy.
In addition, Conrail contends that this case does not even involve pre-enforcement review. The government has already brought suit against Conrail, SEPTA, and Amtrak in two different district courts.[37] Under § 113(h), Conrail is entitled to bring suit in response to the EPA's action pending against it in the district courts. By its own arguments, the government has conceded that once it has filed suit to enforce cleanup costs against a responsible party, the party is entitled to assert its defenses. Conrail asserts as a defense to the government's claims against it that Penn Central is liable for its pre-conveyance polluting activities in accordance with the language in the conveyance order. This court's exclusive jurisdiction precludes review of this defense by the district courts where the government's CERCLA claims are pending. Only this court can decide the validity of the defenses asserted.

*1124 V. The Government's Other Arguments

Sovereign immunity
The government asserts that it has not consented to suit for declaratory judgement "seeking a declaration of non-liability under CERCLA".[38] We disagree. There is no question that the government consented to suit in the Valuation Case. The government was a party to the Valuation Case. It cannot now assert sovereign immunity from a suit seeking the interpretation of the settlement of that suit to which it was a party.
In addition, the jurisdictional provisions of the Rail Act effect a waiver of immunity for the purposes of interpreting our earlier conveyance order because these provisions provide for "continuing" exclusive jurisdiction over the interpretation of this court's own orders. The government argues that even if it has consented to suits for interpretation of conveyance orders, this does not include suits for a declaration that Penn Central has a valid defense to CERCLA. This argument is without merit. This is a suit for the interpretation of a conveyance order among other things.
Conrail offers an additional argument for waiver on its behalf as a cross-claimant. Conrail asserts that its claims seek only to defeat the government's claims under CERCLA already brought against it in two district courts. It argues that under the doctrine of recoupment it has the right to assert any claims arising out of the same transaction or occurrence to reduce or to defeat the government's recovery.[39] The government argues that its claims in the district courts arise out of CERCLA and that the railroads' claims in this court arise out of the language in the settlement agreement and "do not arise in any way out of the circumstance on which the United States' action is based".[40] In other words, the government asserts that the railroads' claims in this court do not arise under CERCLA. The government cannot have it both ways. The claims arise either from the settlement agreement to which the government was a party, thus conferring jurisdiction on this court and waiving sovereign immunity, or they arise under CERCLA, in which case the doctrine of recoupment would apply to allow the railroads to allege these claims as defenses to the government's CERCLA actions in the district courts. Either way, the doctrine of sovereign immunity does not act to bar the parties' claims against the government. We hold that the railroads' claims arise under the Rail Act; sovereign immunity has been waived.
Finally both Penn Central and Conrail argue that § 702 of the Administrative Procedure Act constitutes a further waiver of sovereign immunity.[41] Because we hold that there was a waiver of sovereign immunity, we need not decide this issue.

Ripeness
Penn Central's third claim seeks a declaration that CERCLA was not intended to permit and cannot be read to permit recovery against it because this would constitute an unconstitutional reduction in the amount it received in the valuation settlement. The government contends that this claim is not ripe for review at this time. In determining the ripeness of a declaratory judgment action, the court must consider two factors to determine if a claim is ripe: (1) whether the issues are fit for judicial review; and (2) the hardship to the parties if consideration is withheld.[42] If a case involves a *1125 purely legal issue, it is ripe for review.[43] In addition, if the case involves a factual issue where all the relevant facts have already occurred or are certain to occur, review is also proper. However, if the issue turns on facts that are mere contingencies, review is not proper.
The government argues that this claim raises factual issues that have yet to occur. Penn Central has not yet been named as a party in the suits pending against the railroads in the two district courts. And, even if named, until some liability has been imposed on Penn Central, the issue of whether the compensation drops below the constitutional minimum standard cannot be decided. The government relies solely on a bankruptcy case, In re Combustion Equipment.[44] In Combustion, the Second Circuit held that a party's action for declaratory relief from potential liability under CERCLA was not ripe. The plaintiff was one of 200 entities notified that it was a potentially responsible party. The EPA had not even chosen what type of remedy it would seek from the responsible parties. Further, it was still unclear whether the EPA was going to pursue the plaintiff at all; the plaintiff was merely one of 200 potentially responsible parties. This case is inapposite.
The amount of any liability to be imposed upon Penn Central is irrelevant. Penn Central contends that any liability would cause the compensation it received in the settlement of the Valuation Case to drop below the constitutional minimum. Although we make no decision at this time on the merits of this claim, it is clear that the issue is ripe for our review. The filing of a complaint adding Penn Central to the list of parties allegedly responsible for cleanup costs is not a contingency. The government has filed with the Penn Central Reorganization Court for permission to file against Penn Central on this very matter. The Third Circuit has granted the permission the government sought. In addition, the government even attached a copy of its proposed complaint to the briefs it submitted to the Third Circuit. If the government was not going to pursue Penn Central for a portion of the cleanup costs we would not be deciding this motion today.
In Manville Corporation v. United States, a district court was faced with a similar problem.[45] An insolvent filed suit for declaratory judgment that it was not liable for cleanup costs under CERCLA because this liability was discharged in bankruptcy. The government had not filed any action against the insolvent at the time of the filing or by the time the case was heard. The government argued that the case was not ripe because no suit for recovery had been filed. The court found that the dispute was ripe in spite of this fact. The court held that "absolute finality is not a requirement. Instead, threatened enforcement or the need for a party ... to go to great lengths to prepare for the eventual enforcement of an agency's definitive action often will suffice."[46] The court noted the "dire consequences" a party faces if it refuses to cooperate with the EPA. If the other parties settle with the government and the remaining party refuses to do so, it may be barred from seeking any contribution from those who settled. The court went on to decide what it viewed as a purely legal question of whether the bankruptcy reorganization had discharged future CERCLA claims.
This case bears a close resemblance to the Manville case. Although Penn Central has not been asked to participate in a settlement process as the plaintiff was in Manville, the government has made it quite clear that it holds Penn Central at least partially responsible for the costs it has and will incur in the cleanup of the rail yards formerly owned by Penn Central. We find that enforcement is "threatened" at this time.
This claim involves a purely legal issue. Penn Central asks us to determine whether the Fifth Amendment makes CERCLA liability unconstitutional in the light of the constitutional minimum standard for compensation. *1126 This is a legal question and the relevant facts (the terms and conditions included in the final settlement agreement reached in the Valuation Case) are not subject to change in the future. The determination that any CERCLA liability imposed on Penn Central would violate the Fifth Amendment does not turn on how much liability will be imposed. It turns on whether the plaintiff faces any such liability.
Further, the government has already filed claims against the other railroads. These railroads have counterclaimed against Penn Central in this action seeking a determination that they are entitled to contribution from Penn Central for the liability they face in the cases already filed in district court against them. The identical constitutional issue arises from these counterclaims: can Penn Central be forced to pay them any amount of money or would this constitute a reduction in the constitutional minimum compensation it received in the settlement of the Valuation Case? Deciding whether or not these railroads have contribution actions in view of the conveyance order entails deciding the very issue the government argues is not ripe when raised by Penn Central.
The second factor to be considered under Abbott is the hardship to the parties if review is denied. The government argues that the EPA will encounter great hardship if it is forced to litigate this claim in this court before it has brought action against Penn Central. This argument cuts against the government. Resolution of these issues in one court will save resources, not waste them. Further, the constitutional question will have to be resolved in this court at some point. The government has not asserted that we lack jurisdiction to hear this claim. In fact, the Special Court is the only court that can decide whether compelling Penn Central to pay cleanup costs will constitute a reduction in the constitutional minimum compensation required by the Valuation Case. Thus, the EPA will not save money better used to clean the environment by postponing a decision on this issue by this court to a later date. Although Penn Central may or may not face little hardship, we find that the first factor in the ripeness test supports review at this time.

VI. Conclusion
We hold that this court has exclusive jurisdiction to decide the issues in this case. The government's motion to dismiss the action for lack of subject matter jurisdiction is denied. We reiterate that we do not touch on the merits of the parties' substantive claims.
NOTES
[*] Judge Green was unable to attend oral argument but participated in the decision.
[1] Pub.L. No. 93-236, 87 Stat. 985, codified at 45 U.S.C. § 701 et seq. (1988).
[2] 42 U.S.C. § 9601 et seq. (1988).
[3] Polychlorinated biphenyls (PCBs). It is alleged that for approximately thirty years during Penn Central's ownership, Penn Central spilled quantities of PCBs in the yards. Today, it is widely known that PCBs are deadly to man and to many animals. It is alleged that the chemicals seeped into the water tables under the yards and pose a serious threat to the residents who rely on the water for drinking and other ordinary water use.
[4] In re Penn Central Transportation Co., 944 F.2d 164, 168 (3rd Cir.1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1262, 117 L.Ed.2d 491 (1992).
[5] Id.
[6] In the Matter of the Valuation Proceedings Under Sections 303(c) and 306 of the Regional Rail Reorganization Act of 1973, Misc. No. 76-1 [hereinafter "the Valuation Case"]; see e.g. In re Valuation Proceedings, 445 F.Supp. 994 (Sp.Ct. R.R.R.A.1977).
[7] See the Valuation Case.
[8] 45 U.S.C. § 719(e)(2).
[9] 459 F.Supp. 1013, 1017 (Sp.Ct.R.R.R.A.1978).
[10] Id. In that case the court reviewed the Congressional Record. There is, however, in the legislative history no specific treatment of the issues here involved. We point out that the same Congress which passed the amendments to CERCLA in 1986 also amended the Rail Act. One of the questions pending at that time was whether this court's original and exclusive jurisdiction should be continued. Substantial amendments to the Rail Act were adopted, but no amendment affected this court's original and exclusive jurisdiction.
[11] Id.
[12] Id.
[13] Id.
[14] 533 F.Supp. 1351 (Sp.Ct.R.R.R.A.1982).
[15] Id.
[16] The "as is" provision appears in the bill of sale and assignment entered into in accordance with the conveyance order.
[17] 463 F.Supp. 1321 (Sp.Ct.R.R.R.A.1979).
[18] Id. at 1323.
[19] See Consolidated Rail Corp. v. Penn Central Corp., 533 F.Supp. 1351, 1353 (Sp.Ct.R.R.R.A. 1982).
[20] 423 F.Supp. 941 (Sp.Ct.R.R.R.A.1976), cert. denied, 429 U.S. 1095, 97 S.Ct. 1111, 51 L.Ed.2d 542 (1977).
[21] Id. at 948.
[22] This is evidenced by the government's petition to the Penn Central Reorganization Court for permission to seek imposition of CERCLA liability on Penn Central.
[23] 42 U.S.C. § 9613(b).
[24] Further, the government conceded that Penn Central's claims do not arise under CERCLA in its reply brief. Reply Brief of the United States in Support of Motion for an Order to Show Cause Why the Complaint Should Not Be Dismissed at 3, n. 2.
[25] 42 U.S.C. § 9613(h).
[26] In Reardon v. U.S., 947 F.2d 1509 (1st Cir. 1991), the First Circuit held that § 113(h) barred a suit to determine defenses to CERCLA liability prior to any action for recovery being filed against the plaintiffs. In response to the plaintiffs' claims that they were not responsible for the waste that caused the contamination and thus the cleanup costs, the court held it had no jurisdiction to decide the claims. "When the essence of a lawsuit involves the contesting [of] the liability of the plaintiff for clean-up costs, the courts are to apply the provisions of section 113(h), delaying the challenges until the Government has filed suit." Id. at 1514 (quoting 132 Cong.Rec. § 14898 (daily ed. Oct. 3, 1986)). The government characterizes Penn Central's claims as merely contesting liability for cleanup costs like the first claim in Reardon. Although escaping liability is the ultimate goal of Penn Central's claims, this characterization is oversimplified.

The Reardon court disallowed the plaintiffs' claims that sought the interpretation of CERCLA. But the same court allowed the plaintiffs' claim regarding the constitutionality of a lien imposed by the Environmental Protection Agency ("EPA") under CERCLA on the plaintiffs' property without due process. The court found that the lien procedure violated the Fifth Amendment due process clause. Id. at 1524. Penn Central relies on Reardon to support its argument that § 113(h) does not preclude constitutional challenges to CERCLA.
[27] 889 F.2d 1380 (5th Cir.1989).
[28] Id.
[29] 746 F.Supp. 887, 894 (D.Minn.1990), vacated in part, 793 F.Supp. 898 (D.Minn.1992).
[30] Id. Similarly, in Northshore Gas Co. v. EPA, the court dismissed a suit under the RCRA to enjoin a portion of the EPA's remedial plan. 930 F.2d 1239, 1244-45 (7th Cir.1991).
[31] 923 F.2d 1011 (3d Cir.1991).
[32] Id. at 1020.
[33] 139 B.R. 97, 104 (S.D.N.Y.1992).
[34] 944 F.2d 997, 1006 (2d Cir.1991).
[35] Manville, 139 B.R. at 104.
[36] The government does offer a recently decided case that went the other way. See In re CMC Heartland Partners, 966 F.2d 1143 (7th Cir.1992). This only evidences a split in the circuits and does not affect the cases cited by Penn Central.
[37] In addition the government has petitioned the Penn Central Reorganization Court for leave to file CERCLA claims. Arguably this constitutes action against Penn Central.
[38] United States Reply Brief at 1.
[39] United States v. U.S. Fidelity and Guaranty Co., 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894 (1940).
[40] See United States Reply Brief at 3, n. 2. This contention is amazing in the light of the government's later assertion that the reason this court has no jurisdiction is because the claims arise out of CERCLA. Id. at 15 "This case arises under CERCLA because, as a matter of CERCLA law, Penn Central is liable for the costs of environmental response, without regard to how the Rail Act and this court's prior orders are construed." Id.
[41] 5 U.S.C. § 702 states in part, "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof".
[42] Abbott Laboratories v. Gardner, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967).
[43] Id.
[44] 838 F.2d 35, 37-38 (2d Cir.1988).
[45] 139 B.R. 97. The case was filed in a bankruptcy court and then transferred to this district court.
[46] Id. at 107.